FRANK H. BROWN *v.* STATE OF INDIANA.

[No. 575S131. Filed May 14, 1976.]

*Roy L. Dickinson,* of Franklin, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant was convicted in 1968, in a trial by jury, of murder in the second degree upon an indictment charging murder in the first degree and felony murder. His appeal following the overruling of a belated motion to correct errors in 1975 presents three issues.

1. Failure of the trial court to hold a competency hearing following a suggestion of insanity.
2. Admissibility of items of physical evidence.
3. Failure of the trial court to instruct the jury regarding the weight to be accorded to its view of the scene of the crime.

The sufficiency of the evidence has not been challenged. We, therefore, deem it unnecessary to recite the facts of this case.

## ISSUE I

Prior to trial, defense counsel filed a motion alleging that the defendant was not mentally competent to assist and aid in his defense and without funds and requesting the appointment of "* * * a competent medical doctor to examine him and inquire as to his mental condition and competency." The motion was granted and Doctor E. Rogers Smith, a physician, was appointed to examine the defendant, and the sheriff was directed to deliver Defendant to the physician on February 10th. (Tr. pp. 97, 98). On February 10th, the court issued an order to the sheriff to deliver the defendant to Doctor Smith on February 13th at 11:00 a.m. and to a Doctor Hazel Stevens (presumably a psychologist) at 3:00 p.m. of said day. (Tr. p. 101). On February 15th, Doctor Smith submitted a written report to the court advising that he had examined the defendant and in addition had caused him to undergo psychological testing by Doctor Stevens. Doctor Smith's report was a general evaluation of the defendant based both upon his examination and upon the written report to him from Doctor Stevens, which was enclosed in the report to the court, but advised specifically that, "He had complete ability to differentiate between right and wrong, and I am sure has the intelligence to aid his attorney in his own defense." (Tr. p. 118).

Following receipt of the report from Doctor Smith, the court proceeded to a trial without the holding of a competency hearing contemplated under Ind. Code § 35-5-3-2, Burns 9-1706a, Acts 1951, ch. 238, § 2 as amended by Acts 1961, ch. 151, § 2, Acts 1963, ch. 91, § 1, and Acts 1967, ch. 291, § 2. It is the defendant's contention that the court erred in its failure to hold a hearing and to determine his competency to stand trial under the aforementioned statute.

The State points out that the defendant made no objection to the aforementioned procedure and charges that error, if any, has been waived. The waiver theory is inapplicable to

the issue, however, as has been previously determined in *Tinsley* v. *State*, (1973) 260 Ind. 577, 298 N.E.2d 429.

This issue is controlled by *Cook* v. *State*, (1972) 258 Ind. 667, 284 N.E.2d 81. In that case, we unanimously held that where the examining doctors reported a defendant competent to stand trial, it was not necessary to hold a competency hearing. The right to such a hearing is not absolute or automatic but is dependent upon the presence of reasonable cause to suspect that the defendant is incompetent to stand trial. It is obvious that in view of the report of Doctor Smith, the trial judge concluded that there was no reasonable ground for believing the defendant to be insane or incompetent to stand trial, and under these circumstances, he was not required to hold the hearing contemplated under the statute.

Defendant has further attacked the trial court's procedure by reason of Doctor Smith's having had the benefit of Doctor Stevens' report in making his evaluation. It is his contention that such procedure was contrary to the statutory requirements and was prejudicial to the defendant in that he was thereby denied the protection of medical opinions by two disinterested physicians.

The defendant has erroneously concluded that by his suggestion of incompetence, that is to say by his filing of a motion for a psychiatric examination, the court was thereby bound to put into effect the provisions of the statute. This apparently stems from the court's having granted his motion for a psychiatric examination. This action on the part of the court, however, did not amount to a finding of "reasonable ground for believing the defendant to be insane," the court could have denied the motion and absent other evidence, there would have been no error. That the court desired to have the benefit of a professional opinion prior to making his judgment of "reasonable ground for believing," did not put the statute into operation and require compliance with all of its provisions.

## ISSUE II

Various items of physical evidence, including a rifle, shells and money were introduced into evidence over the objection of the defendant that they had been obtained in an illegal search of his automobile. The search had been made, without benefit of warrant, near the scene of the arrest where the vehicle had been abandoned.

Both the Indiana and United States Supreme Courts have been more tolerant of warrantless searches of automobiles, under exigent circumstances, than of other places.

"* * * automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." *Chambers* v. *Maroney*, (1970) 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94. See Also *Whitten* v. *State*, (1975) 263 Ind. 407, 333 N.E.2d 86; *Luckett* v. *State*, (1972) 259 Ind. 174, 284 N.E.2d 738.

The evidence most favorable to the State indicates that a Lt. Hudson had just driven past the scene of the crime, on the night in question, and observed two men standing behind a white 1960 Chevrolet. The trunk of the automobile was open. He had driven past this scene about 50 to 80 feet, to the next intersection when he heard a gunshot. He returned and saw the deceased run across the street and collapse. He saw a second man running behind the deceased shouting "Hold up." Lt. Hudson also saw the vehicle pull out onto the street and speed away.

The officer gave chase. He followed the car a few blocks to a point where the driver abandoned it and ran into some bushes alongside Fall Creek. He then pursued the subject on foot. Other policemen joined in the search. Brown was finally apprehended by a Sgt. Lyle. He was searched, then taken first to the scene of the crime and then to the city jail. The officers, other than Sgt. Lyle, returned to the

abandoned auto and searched it. All this took place at about 3:30 in the morning.

In accordance with *Chambers, Whitten* and *Luckett,* we conclude that the officers had probable cause to believe that seizable items would be found inside the car. They knew that a holdup had taken place, and that a shot had been fired. Yet no gun had been found with the suspect. It was reasonable, under such circumstances, for the officers to search the vehicle for instrumentalities and evidence of the crime.

## ISSUE III

Appellant finally contends that reversible error resulted from the failure of the trial judge to instruct the jurors on the weight to be given a jury view.[1] Defense counsel had requested the jurors be taken to the scene of the homicide, and this request was joined in by the State. The motion was granted, but no instruction was given concerning this view either before it took place or in the final instructions to the jury.

Appellant has not told us at which point the instruction should have been given, or if it should have been given at both times. Nor did he at any time request or tender such an instruction. Therefore, although better practice would dictate the giving of such an instruction, we consider that in the absence of a specific request or tender of an appropriate instruction on the matter, the general instruction given by the trial court, telling the jurors what evidence they should consider, given at the conclusion of the trial, to be sufficient.[2] *Barker* v. *State,* (1958) 238 Ind. 271, 150 N.E.2d 680; *Beard* v. *State,* (1941) 219 Ind. 87, 36 N.E.2d 939.

1. Though the position has been criticized, Indiana adheres to the fiction that what is seen by jury members during a jury view is not evidence. *Shular* v. *State,* (1885) 105 Ind. 289, 4 N.E. 870.

2. State's Instruction number 8, which was given by the court, stated: "It is your duty to determine the facts of this case from the evidence given in Court in your presence, and to disregard any and all information that you or any of you may have derived from any other source." (Transcript p. 253).

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 346 N.E.2d 559.