OSSIE MONTAGUE, JR. *v.* STATE OF INDIANA.

[No. 476S105. Filed February 24, 1977. Rehearing denied April 15, 1977.]

*Richard W. Reed,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *David T. O'Malia,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Ossie Montague, Jr., was charged by information on June 18, 1975, with the first degree murder of one Norwood Churchill. He subsequently entered pleas of not guilty and not guilty by reason of insanity. After trial by jury, the Appellant was found guilty of second degree murder on November 27, 1975. Pursuant to statute, the Appellant was sentenced on December 18, 1975, to imprisonment for not less than fifteen and not more than twenty-five years. Ind. Code § 35-1-54-1 (Burns 1975). The Appellant's motion to correct errors was filed on January 15, 1976, and was overruled on January 27, 1976.

The evidence at trial revealed that in the early morning hours of June 3, 1975, the Appellant had his wife call Muncie, Indiana police and ask that a patrol car be sent to their home. Two officers arrived there at 3:54 a.m. for what they thought was a domestic quarrel. The Appellant's wife answered the door. She was crying and, as the officers stepped into the home, the Appellant was found crying also. When the officers asked if there was anything they could do to help, the Appellant stated that he had killed a man. Because of this admission and earlier police radio broadcasts reporting a shooting at a local restaurant, the officers informed the Appellant of his constitutional rights.

The Appellant indicated that he understood his rights and was asked where he had put the body and if he was sure the man was dead. He responded that he was sure the man was dead, but could remember only that he had dumped the body "on a corner or somewhere." The Appellant made no reply to a question about a gun. He collapsed and was taken to Ball Memorial Hospital by ambulance.

Police were later led to the gun in question by the Appellant's wife. It was located on a kitchen counter and was confiscated by police. Police also inspected the Appellant's automobile, parked at the side of the house, to see if it matched the description in the earlier radio broadcast. It did.

Additional officers called to the scene photographed the Appellant's car. A peculiarly colored mud was seen on and in the vehicle, from which police were able to locate the body of the decedent. A spent slug was removed from the car, additional photographs were taken, and the car was towed to the police garage. A search warrant obtained some nine days later enabled police to thoroughly search the car and secure additional evidence, including dirt and blood samples, a holster, and another bullet.

## I.

The first issue raised by this appeal is whether the trial court erred in overruling a defense motion to suppress evidence obtained from the Appellant's home and car and in admitting that evidence at trial. It is contended that the gun found in the appellant's kitchen was seized illegally, as were the bullet and mud found in and on the Appellant's car. It is further contended that evidence secured at the scene of the decedent's body and during the later search of the Appellant's car was the fruit of the initial illegal searches of the home and car. The last contention regarding this motion to suppress is that articles of clothing taken from the Appellant were improperly admitted. We find this entire morass of argument to be without merit.

The evidence in this case clearly shows that police were called to the Appellant's home by the Appellant's wife, at the request of the Appellant himself. When police, thinking that a domestic quarrel was involved, asked if they could help, the Appellant stated he had killed someone. After police informed him of his rights, the Appellant replied "I know" and continued talking. The brief of the Appellant does not contend that any of the statements made at this time were made involuntarily or unintelligently.

The Fourth Amendment of the United States Constitution and Article 1, § 11 of the Indiana Constitution protect individuals from unreasonable searches and seizures. Under these guarantees a search and seizure must be supported by a warrant, unless they fall within certain narrowly defined categories. *Ludlow* v. *State*, (1974) 262 Ind. 266, 314 N.E.2d 750.

The seizure of the gun in this case was not the product of a search in the constitutional sense. The Appellant's wife did not act as an instrument or agent of the State here. *Coolidge* v. *New Hampshire*, (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Nor did a search take place when police entered the kitchen of the Appellant's home to retrieve the weapon. The word "search" connotes uncovering that which is hidden, prying into hidden places, examining one's premises or person. *Alcorn* v. *State*, (1970) 255 Ind. 491, 265 N.E.2d 413; *Lindsey* v. *State*, (1965) 246 Ind. 431, 204 N.E.2d 357. Police here were told of the location of the gun, walked to the location so described, and found the weapon in open view on a kitchen counter. Even if this action by police is viewed as a search, we think that the facts that the Appellant's wife summoned police to her home and voluntarily disclosed the whereabouts of the gun supplied consent to the limited "search" that occurred. *Coolidge* v. *New Hampshire*, *supra; Greer* v. *State*, (1970) 253 Ind. 609, 255 N.E.2d 919.

Having come across the Appellant's gun in a permissible fashion, there is no question that police properly seized the

weapon. It was the instrumentality of the crime involved and police were not required to obtain a warrant before seizing it. *See: Warden* v. *Hayden,* (1967) 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Berner, *Search and Seizure: Status and Methodology,* 8 Val. U. L. Rev. 471 at 578-579 (1974).

Similarly, the mud on the exterior of the Appellant's automobile was not found as the result of a "search." It was in open view for anyone to see. The deduction by police of the location of the decedent's body, and the evidence found there, can thus in no way be considered the fruit of an illegal search or seizure.

The warrantless search of the interior of the Appellant's car was proper, as was the later search conducted after a warrant was obtained. An automobile may be searched without a warrant if probable cause exists for the search. *Chambers* v. *Maroney,* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Brown* v. *State,* (1976) 264 Ind. 484, 346 N.E.2d 559; *Cooper* v. *State,* (1976) Ind. App., 357 N.E.2d 260. Since police had heard the Appellant admit to the killing of a man and had found that his car matched the description of one reported to be involved in a shooting, probable cause to believe that the vehicle contained items they were entitled to seize clearly existed. The search conducted at the scene was proper, as was the impoundment of the car. Since the Appellant's attack on the second, more exhaustive search of his car is based upon the purported impropriety of the initial search, it too must fail.

We also find no error in the seizing of several articles of the Appellant's clothing. The Appellant's T-shirt and shoes were taken at the hospital. Taken from the Appellant at his formal arrest were his shirt and trousers. Tests on these articles revealed blood stains. The facts known to police at the time of the Appellant's arrest would give rise to a reasonable belief that these clothes should be seized and tested. It was proper to do so. *Garr* v. *State,* (1974) 262 Ind. 134, 312 N.E.2d 70.

## II.

The Appellant next contends that the trial court erred when it failed to hold a hearing on his competency to stand trial. Neither the Appellant nor his trial counsel contended at trial that he was incompetent to stand trial. It is asserted, however, that the Appellant's plea of insanity, a statement by him that he did not at times consider himself of sound mind, and his physical collapse at one point during the trial, combined to require that the trial court hold such a hearing *sua sponte.*

Ind. Code § 35-5-3.1-1 (Burns 1975) reads in part:

> *"Hearing to determine defendant's sanity during trial.—* When at any time before the final submission of any criminal cause to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, the court shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two [2] competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. * * *"

Pursuant to this statute, the trial court appointed two psychiatrists to examine the Appellant and report on his sanity. Both physicians reported that the Appellant was fully competent to stand trial. A hearing is not required under such circumstances. *Brown* v. *State,* (1976) 264 Ind. 448, 346 N.E.2d 559. Nor do we think that the Appellant's later loss of consciousness required such a hearing. The trial was recessed while the Appellant was treated. The record does not reveal that the Appellant was any less competent to stand trial after this recess than he was before it.

## III.

Prior to trial, the Appellant submitted to the trial court a motion for bifurcated trial in order to separate his plea of

not guilty by reason of insanity from his plea of not guilty. The denial of this motion by the trial court is attacked on the grounds that the circumstances of this case required a bifurcated trial and that the ruling on the motion was made without a hearing.

In *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351, this Court held that while a bifurcated trial is permissible under our trial rules, a plea of insanity does not, in the absence of other compelling circumstances, entitle a defendant to such a trial. *See also*: *Murphy* v. *State*, (1976) 265 Ind. 116, 352 N.E.2d 479; *Sexton* v. *State*, (1974) 262 Ind. 554, 319 N.E.2d 829. No compelling circumstances were brought to the attention of the trial court, nor have any been presented in this appeal.

The Appellant's motion for a bifurcated trial was essentially based upon the "seriousness and complexity of the crime charged," the "highly technical medical testimony" to be presented, and the position that a plea of not guilty by reason of insanity is tantamount to admitting guilt. These are problems which arise in *any* case in which a plea of insanity is entered. This Court addressed such problems in *Hester* v. *State, supra,* and found them not to be compelling circumstances requiring a bifurcated trial. A hearing on the Appellant's motion was not necessary under these circumstances.

The Appellant's brief presents as compelling circumstances the facts that the Appellant could not remember certain facts relating to the crime and that his plea of not guilty was premised upon a theory of self-defense. We do not consider these circumstances so compelling that the denial of the Appellant's motion can be called clear error.

## IV.

When the Appellant arrived at the hospital on June 3, 1975, an officer of the Ball State University Campus Police was present in the emergency room at the request of Muncie po-

lice. Questioning by the officer elicited a statement by the Appellant that the decedent was at "Moxies", "the old swimmin' hole." The Appellant urges error in the admission into evidence of testimony regarding this statement on the grounds that he was not properly advised of his *Miranda* rights at that time and that the circumstances of his emergency room treatment rendered the statement involuntary. It is also asserted that the trial court erred in admitting this oral statement of the Appellant because its existence was not revealed to defense counsel in the State's response to the Appellant's motion for discovery. It is argued that this failure to disclose prompted defense counsel not to seek a pre-trial hearing on voluntariness.

Any error in the trial court's action here must be considered harmless. *Greer* v. *State,* (1969) 252 Ind. 20, 245 N.E.2d 158; *Chapman* v. *California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Also admitted into evidence was the admission of the Appellant that he shot a man and the deduction by police from physical evidence of the location of the decedent's body. A substantial body of physical evidence incriminated the Appellant. The statement by the Appellant challenged here is so minor in relation to the other evidence regarding the commission of the crime and the sanity of the Appellant that it cannot be said that its exclusion from evidence would have affected the jury's verdict.

## V.

It is next argued that evidence at trial was insufficient to support the jury's determination that the Appellant was legally sane at the time of the crime in question. When a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the State. *Johnson* v. *State,* (1970) 255 Ind. 324, 264 N.E.2d 57. When reviewing the sufficiency of the evidence supporting the conclusion by the trier of fact that the defendant was sane, we treat the issue

not unlike other questions of fact. We cannot weigh the evidence, nor can we judge the credibility of witnesses. This Court looks to the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Maxey* v. *State*, (1976) 265 Ind. 244, 353 N.E.2d 457; *Blake* v. *State*, (1975) 262 Ind. 659, 323 N.E.2d 227.

The Appellant acknowledges that two court-appointed physicians testified at trial that the Appellant was, in their opinion, legally sane at the time of the commission of the crime charged. The Appellant's argument that much of their testimony supports the opposite conclusion and that their opinions were outweighed by testimony of other witnesses asks this Court to judge the credibility of witnesses and weigh evidence. As already noted, this Court cannot do this.

Portions of the testimony of the Appellant himself may be viewed as supporting the jury's verdict. The Appellant testified that he spent the evening preceding the crime in question in the company of the decedent. They had quarreled earlier that day and got together to "talk things over." The Appellant exhibited no signs of hysterical or dissociative reaction, the diagnosis upon which his insanity plea was based, during the course of that evening. Other testimony established that shortly before the shooting the Appellant was attempting to quiet the decedent, "gettin' him under control," and that the Appellant was calm even though the decedent was belligerent.

The conduct of the crime in this case and its aftermath further supported a conclusion that the Appellant appreciated the wrongfulness of his conduct. After the shooting, the decedent was taken away by car, dragged through some grass, and placed behind some rocks near a railroad trestle. When police arrived at the Appellant's home, the Appellant showed a knowledge of what he had done and remorse at having done it.

The evidence regarding the legal sanity of the Appellant certainly conflicts. We cannot, however, substitute our judgment for that of the jury under such a circumstance. *See Johnson* v. *State*, (1977) 265 Ind. 652, 358 N.E.2d 748.

## VI.

It is also asserted that the trial court erred in refusing Defendant's Proposed Jury Instruction No. 5, concerning the defense of self-defense, and in giving instead Court's Instruction No. 10, which the Appellant contends was inadequate. Court's Instruction No. 10 reads as follows:

"In a case where the evidence proves or the defendant admits that he struck the fatal blow, but claims that he was justified in so doing, the burden is still on the State to prove his guilt beyond a reasonable doubt, and if upon consideration of all the evidence there is still in your minds a reasonable doubt of his guilt, you should acquit him. It is therefore necessary that you be instructed as to the law of self defense.

"The right of an accused man to invoke the law of self defense must not be used as a sword placed in the hands of a wrongdoer to enable him lawfully to take the life of an adversary, but should be used as a shield to protect from punishment the man who tries in good faith to defend himself against an unlawful act or aggression, and in so doing kills his adversary. When a man engages in a mutual, voluntary combat with another or incites or brings on and provokes a conflict by his own wrongful act, he has no right to take his adversary's life. He is in the wrong, and to put himself in the right he must retreat and endeavor to withdraw from the conflict, if and to the extent that retreat and withdrawal are safe and practicable. In such a case of mutual quarrel or of a mere threat of assault, one cannot justify killing the other although apparently in self defense, unless he first retreats as far as he can go safely, thus putting himself in the right. But if instead of retreating, he stands his ground and kills his opponent, he cannot be heard to assert that he killed in self defense. But where one is in a place where he has a right to be, and is himself without fault, and is unlawfully assailed, he need not retreat or try to withdraw, but may stand his ground and repel force with force, and go even to the extent to taking the life of his adversary, provided that in repelling his assailant he uses no more force than is reason-

ably necessary in his own defense. It is not the law that one may repel any and every kind of assault by killing the assailant. If it is a felonious assault, that is, one which reasonably appears to threaten great danger or serious bodily harm, then it is justifiable to use whatever means and to whatever extent it appears to the assaulted party to be reasonably necessary to protect his life, and if the result is death to the assailant, the killer is not legally responsible. Whether an assault may be reasonably thought to be murderous or to threaten great bodily harm is always a question for the jury to determine from all the facts and circumstances in evidence."

The Appellant asserts as the first inadequacy of this instruction that the first paragraph does not sufficiently state that where self-defense has been raised, the State has "an additional duty to negate the elements of self defense by substantial evidence of probative value." This instruction clearly conveyed to the jury that if it had a reasonble doubt that the defendant acted in self-defense, it should acquit him. We think that the jury was sufficiently advised of its duty and the State's burden of proof. *See Woods* v. *State*, (1974) 162 Ind. App. 316, 319 N.E.2d 688.

The second inadequacy urged is that the instruction raises the issue of retreat while no evidence of retreat was presented to the jury. This is a curious contention, since part of the Appellant's defense appears to have been that he could not remember precisely what happened. Even if we assume that no question of retreat was before the jury, we do not see that the Appellant was prejudiced by this instruction. The instruction of retreat correctly stated the law. 40 C.J.S. *Homicide* § 132 (1944). It cannot be presumed that the jury was somehow confused or misled thereby.

The Appellant finally argues that the instruction was "entirely too general and too vague on the issue of when an assault 'may be reasonably thought to be murderous or to threaten great bodily harm' and failed to inform . . . that the defendant could reasonably act on appearances even if in retrospect he was proven to be wrong." The Appellant does

not specify the way in which the instruction should have been more precise here. We do not think it necessary. The fact that an individual may reasonably act on appearances in such a situation is set out in the instruction.

While the Appellant's criticisms of the instruction given here should be given consideration in drafting such an instruction, we do not think that they render the instruction so deficient that reversal is required. The instruction adequately instructed the jury on self-defense. The instruction tendered by the defense on the same subject matter was therefore properly refused. *Fuller* v. *State,* (1973) 261 Ind. 376, 304 N.E.2d 305.

## VII.

Finally, the Appellant contends that the trial court erred when it failed to give a tendered defense instruction which instructed, using statutory language, on the procedure to be followed upon a finding of not guilty by reason of insanity. It is within the discretion of a trial court to instruct on the consequences of such a plea if it deems it appropriate. *Cf. Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275. If an erroneous view of the applicable law is implanted in the minds of the jurors, the failure to instruct the jury on the correct procedures will result in reversal. *Dipert* v. *State,* (1972) 259 Ind. 260, 286 N.E.2d 405. The jury in this case was not presented with an incorrect view of post-trial procedures. The refusal by the trial court of the tendered instructions on those procedures therefore was not error. *Hall v. State,* (1976) 264 Ind. 448, 346 N.E.2d 584; *Lockridge* v. *State, supra; Dipert* v. *State, supra.*

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Prentice, J., concur; DeBruler, Hunter, JJ., concur in result.

NOTE.—Reported at 360 N.E.2d 181.