**Kenneth Earl ADAMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1077S755.**

Supreme Court of Indiana.

March 6, 1979.

John F. Ittenbach, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Marion Criminal Court on March 29, 1977, appellant Adams was convicted of first degree burglary, armed robbery, armed rape and armed sodomy. Adams received terms of imprisonment of ten to twenty years, twenty years, twenty-four years and ten years respectively for the four offenses. The last three terms were to run consecutively.

On the evening of June 19, 1976, the victim, E.J., was alone at home with her two year old son. After she retired for the evening, she heard a noise like a window opening and then saw a man standing in her bedroom. She could not positively identify the man as she was not wearing her contact lenses, however, she did notice that he was a short black man. The man struck her when she began screaming and proceeded to blindfold her with a pillow case. He

then asked her where her purse was. When informed that the purse was downstairs, the man led the victim and her son down to the living room while threatening to kill them with a knife he said he was carrying. When downstairs, the man directed E.J. to get her wallet and again threatened to kill the boy. She then gave the man her wallet which contained over $80.

After taking the victim's wallet, the man ordered the victim to disrobe and instructed the boy to sit in a rocking chair. He then pushed the victim onto a couch where he committed oral sodomy and rape. The man then led E.J. and her son back upstairs and made his escape. The victim waited until she heard the man depart, removed her blindfold and called the police.

Appellant presents four issues for our review concerning: (1) whether the trial court erred in not hold a competency hearing; (2) the admission of certain incriminating statements made by appellant to the victim; (3) the propriety of the sentences imposed, and; (4) the denial of appellant's petition to file a belated amended motion to correct errors.

I.

Prior to trial, appellant filed a suggestion of insanity with the court. The trial judge appointed two physicians to examine appellant. One of these doctors submitted a written report to the court indicating that in his opinion appellant had sufficient comprehension to understand the nature of the proceedings and to assist in his defense. Appellant refused to be examined by the second doctor so the court appointed a third physician. Appellant refused to cooperate in an interview with this doctor as well. Appellant now argues for reversal of his convictions based upon the trial court's failure to hold a competency hearing pursuant to Ind.Code § 35–5–3.1–1 (Burns 1975).

The right to a competency hearing is not absolute and the mere appointment of two physicians to examine a defendant does not automatically invoke the statutory procedure set out in Ind.Code § 35–5–3.1–1.

*Montague v. State,* (1977) Ind., 360 N.E.2d 181; *Brown v. State,* (1976) 264 Ind. 484, 346 N.E.2d 559. The statute and due process considerations only require that a hearing take place where the evidence before the court raises a bona fide or reasonable doubt as to the defendant's sanity. *Pate v. Robinson,* (1966) 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Cook v. State,* (1972) 258 Ind. 667, 284 N.E.2d 81. In the present case, the only evidence actually before the court was the report submitted by the only psychiatrist who was able to examine appellant. This doctor opined that appellant was legally competent. The mere fact that appellant filed his suggestion of insanity does not constitute evidence of his mental condition. *Cook, supra* at 258 Ind. 670, 284 N.E.2d 83. As the only real evidence before the court indicated sanity rather than insanity, the court was justified in not holding a hearing. *See Parsley v. State,* (1976) Ind., 354 N.E.2d 185; *Brown v. State,* (1976) Ind., 346 N.E.2d 559.

## II.

Appellant next argues that the trial court erred by denying his Motion to Suppress incriminating statements he made to the victim, E.J., several days after the crimes occurred. The facts and events surrounding the making of these statements were as follows.

During the summer of 1976, the victim, E.J., was working as an employment counselor for the Public Action and Correctional Effort (PACE). Approximately ten days after the commission of the crimes, appellant, who had been one of the victim's clients, called her at the PACE office. She thought she recognized appellant's voice as that of the man who attacked her and so she notified the police. The victim testified that she informed police that she was 99% positive that appellant was her assailant. However, before acting upon this belief, she wanted to be 100% certain so she suggested that a tape recorder be installed in her home for the purpose of recording a confession she hoped to elicit from appellant. She also suggested that the police station an officer in her home in order to overhear appellant's confession. The victim believed that if Adams' confession were recorded and overheard by others, then a prosecution would not come down to her word against his and she could thus avoid the indignities she believed were generally visited upon complaining witnesses in rape cases.

In response to the victim's plan, the police arranged to install a tape recorder in E.J.'s living room on August 19, 1976. Also, two police officers hid in a dining room adjacent to the living room. On that date, the victim met appellant at the PACE office and returned with him to her home. Once inside her living room, E.J. began talking with appellant. During the course of the forty-five minute conversation which followed, appellant explained how he had broken into E.J.'s home and his philosophy of life. They also discussed the rape and robbery and talked about the weapon he had with him that night. At this point appellant heard a noise in the dining room and got up to investigate. When appellant confronted the officers he was placed under arrest.

Appellant's Motion to Suppress evidence obtained at this conversation was denied by the trial court following a hearing on March 25, 1977. At trial, the victim was allowed to testify as to the substance of the conversation. Due to the poor quality of the tape recording, it was not admitted into evidence. Also, the officers who hid in the dining room were unable to testify as to what appellant said at the conversation because his voice had not been audible at that distance. Appellant now contends that the trial court should have excluded evidence of the incriminating conversation because the police officers, who were hiding in the dining room, did not administer the *Miranda* warnings prior to the conversation.

The procedural safeguards of *Miranda* only apply in situations involving what the United States Supreme Court has termed "custodial interrogation." *Oregon v. Mathiason,* (1977) 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Johnson v. State,* (1978) Ind., 380 N.E.2d 1236, 1240; *Bugg v. State,*

(1978) Ind., 372 N.E.2d 1156, 1158. Also, *Miranda* warnings need not precede statements made by a defendant to a private citizen. *Yates v. State,* (1978) Ind., 372 N.E.2d 461; *McFarland v. State,* (1975) 263 Ind. 657, 665, 336 N.E.2d 824, 828. Appellant recognizes these principles but contends that under the facts of this case, *Miranda* warnings were required because the victim was an agent of police rather than a private citizen and because the presence of the police officers during the conversation constituted "custody" within the meaning of *Miranda.* We disagree and in so doing find it unnecessary to reach a decision in regard to the victim's alleged status as a police agent since we feel appellant was clearly not in custody at the time he made the incriminating remarks.

■■ Custodial interrogation refers to questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Mathiason, supra,* at 429 U.S. 494, 97 S.Ct. 711, ·50 L.Ed.2d 719; *Johnson, supra,* 380 N.E.2d 1240. The prophylactic rule created in *Miranda* was designed to "dispel the compulsion inherent in custodial surroundings [in which] no statement obtained from the defendant can truly be the product of his free choice." *Miranda v. Arizona,* (1966) 384 U.S. 436, 458, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694, 714. It cannot be seriously argued that there was any "compulsion inherent" in the surroundings where appellant made his statements to the victim since he was totally unaware of the policemen's presence until after the conversation with E.J. had ended. Thus, the incriminating statements which appellant made to the victim were in no way the product of the sort of custodial setting to which *Miranda* applies. *Cf. United States v. Archbold-Newball,* (5th Cir.) 554 F.2d 665, 673–75, *cert. denied* (1977) 434 U.S. 1000, 98 S.Ct. 644.

Appellant's Motion to Suppress was correctly denied and the victim's account of the conversation with appellant was properly admitted as evidence at trial.

### III.

Appellant next advances two arguments with respect to the sentences imposed on the four counts. First, it is argued that the first degree burglary conviction should "merge" into the armed felony convictions since all of the offenses arose from the same "set of operative facts." Appellant also contends that the three sentences on the armed felony counts should not have been ordered to run consecutively.

■■ As for appellant's "merger" theory, a decision as to whether or not separate sentences may be imposed upon multiple convictions is determined by an inquiry into whether the offenses are the "same" for purposes of double jeopardy. *Elmore v. State,* (1978) Ind., 382 N.E.2d 893. Since a conviction for burglary requires proof of facts in addition to those required for convictions of armed rape, robbery and sodomy, the offenses are not the same and separate sentences were properly imposed for each.

■■ Appellant's argument concerning the propriety of consecutive sentences must also fail. The three terms of imprisonment which were ordered to run consecutively were all imposed pursuant to the armed felony statute. Ind.Code § 35–12–1–1 (Burns 1975). This statute provides that the trial court may order the sentence for any armed felony conviction to commence at the expiration of the imprisonment imposed for any additional crimes committed at the same time. The facts set out at the beginning of this opinion indicate that the three offenses in question occurred at the same time within the meaning of the statute. *See Pruitt v. State,* (1978) Ind., 382 N.E.2d 150, 153; *Snyder v. State,* (1978) Ind., 373 N.E.2d 1101.

### IV.

Appellant's final argument concerns the denial, without a hearing, of his petition to file a Belated Amended Motion to Correct Errors pursuant to Ind.R.P.C. 2(1) which provides in part:

"Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion for new trial, where:

(a) *no timely and adequate motion to correct error was filed* for the defendant;

(b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and

(c) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule."

It seems that appellant's trial counsel filed a timely Motion to Correct Errors which was denied. Two days after the denial of this motion, pauper counsel was appointed for the purpose of prosecuting appellant's appeal. Approximately three months later appellant filed his P.C. 2 petition which alleged that the initial Motion to Correct Errors was "inadequate" for failing to include three issues which appellant desired to preserve for appeal. This petition was summarily overruled by the trial court on the same day it was filed. The record does not indicate that a hearing was ever requested on the petition.

A trial court's ruling on a Belated Motion to Correct Errors will be reversed only upon a showing of abuse of discretion. *Newland v. State,* (1968) 250 Ind. 512, 236 N.E.2d 45 *cert. denied* 393 U.S. 937, 89 S.Ct. 298, 21 L.Ed.2d 273. Appellant contends that the trial court's summary denial of his petition without a hearing constituted an abuse of discretion, however, there is no requirement that a hearing be held before a ruling on every Belated Motion to Correct Errors filed pursuant to Ind.R.P.C. 2(1). *William v. State,* (1976) Ind.App., 341 N.E.2d 524. Moreover, a defendant's failure to request a hearing may be deemed a waiver of any error in the trial court's refusal to hold such hearing. *Kindle v. State,* (1974) 161 Ind.App. 14, 24, 313 N.E.2d 721, 727.

Finally, we do not feel that the omission, by appellant's trial counsel, of several issues which appellant wished to argue on appeal, is sufficient to render the initial Motion to Correct Errors "inade-quate" within the meaning of Ind.R.P.C. 2(1)(a). The phrase "timely and adequate" refers to the requirements that a Motion to Correct Errors be filed within 60 days after the entry of judgment, Ind.R.Tr.P. 59(C), and that it be in the form set out in subsection B of that rule. Thus, a Motion to Correct Errors which is filed within sixty days of judgment, but which fails to set out the alleged errors with specificity as required by Rule 59(B), would be timely but inadequate. However, the mere omission of issues in an otherwise timely and proper motion would not render such motion inadequate so as to serve as grounds for a petition under P.C. 2(1). To hold otherwise would allow the dilatory defendant to file an endless string of petitions by simply inventing a new issue each time his Motion to Correct Errors is denied.

On the record presented, we find no demonstrable abuse of the trial court's discretion in denying appellant's petition without a hearing.

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in affirming appellant's conviction upon consideration of Issues I, II and III. However, he finds appellant's claim under Issue IV to be meritorious and would therefore order this appeal terminated and remanded to trial court with Instructions to grant appellant's motion for leave to file a belated motion to correct errors.