**James Smysor BROWN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 181S13.**

Supreme Court of Indiana.

Dec. 29, 1982.

Rehearing Denied Feb. 25, 1983.

John Richard Walsh, II, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, James Smysor Brown, was convicted by a jury of nine different

counts in three consolidated cases. He was found guilty on three counts of rape, a Class A felony, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), three counts of confinement, a Class B felony, Ind.Code § 35–42–3–3 (Burns 1979 Repl.), two counts of robbery, a Class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and one count of attempted robbery, a Class B felony, Ind. Code §§ 35–41–5–1 and 35–42–5–1 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for terms of thirty years on each count of rape, ten years on each count of confinement, and ten years on the counts of robbery and attempted robbery. The sentences within each of the three cases are to be served concurrently but the sentences on each different case are to be served consecutively for a total period of ninety years. Defendant raises the following six issues in his direct appeal.

1. Whether there was sufficient evidence to support the jury's verdict on the three convictions for rape and the two convictions for robbery;

2. Whether the conviction for attempted robbery was erroneous due to the alleged insufficiency of the charging information on that count;

3. Whether the trial court erred in denying defendant's petition to file a belated motion for new trial due to the alleged inadequacy of his original motion to correct error;

4. Whether the trial court committed reversible error in denying defendant's motion to suppress certain evidence;

5. Whether defendant was denied his constitutional right to the effective assistance of counsel; and

6. Whether the trial court erred by not stating sufficient reasons for imposing consecutive sentences.

A brief summary of the facts from the record most favorable to the state shows that the victim in the first case, C.T., was leaving a grocery store around 8:00 p.m. on the evening of December 5, 1979, when she was approached in the parking lot by a man later identified as defendant, who asked directions to a specific street address. After she gave the requested directions, the man placed a knife to her side and forced her to enter her car and drive around as he directed. Eventually he ordered her to pull over to the side of the road and get into the back seat with him. He forced her to engage in oral sex and intercourse and then demanded money from her. Since C.T. only had a few dollars with her, she invented a story about being able to obtain money from her aunt. When they arrived at her aunt's home, C.T. ran into the house and the man left, taking her driver's license with him.

In the second case, the victim, J.W., testified that she was going to her car after leaving work around 9:30 p.m. in the evening of December 5, 1979, when she was approached by defendant. He asked her questions about the location of a certain address and she agreed to take him to a telephone. When defendant was inside her car, he pulled out a knife and told her not to scream or she would be hurt. He forced her to drive around for a while and then forced her to get into the back seat and engage in oral sex and intercourse. He then asked her for money and she gave him twenty-five dollars but hid other money that she had with her in her shoe. Before he left her, defendant took her driver's license and threatened to harm the people at that address if she reported the attack.

In the third case, the victim, J.M., testified that she was getting into her car on the evening of November 10, 1979, when defendant accosted her, put a knife to her throat, and told her not to scream or he would cut her head off. As in the other two cases, defendant ordered J.M. to drive around, then had her stop the car and get into the back seat where he raped her and forced her to engage in other sexual acts. After the sexual assault, defendant demanded money from her and was not satisfied when she said she only had thirteen dollars with her. Defendant forced her to try using a bank teller machine to obtain more money, and when that didn't work, J.M. invented a story about being able to

borrow money from a girlfriend. She could not reach this friend by telephone, so defendant finally took the money she had and her driver's license. He threatened to kill her and her family if she told anyone about the incident.

## I.

■ Defendant first contends that there was insufficient evidence on the element of penetration in each of the three cases to sustain the three convictions for rape. Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Duffy v. State,* (1981) Ind., 415 N.E.2d 715; *Wofford v. State,* (1979) Ind., 394 N.E.2d 100.

■ A conviction for the crime of rape as a Class A felony requires proof of knowing or intentional sexual intercourse with a member of the opposite sex committed by using or threatening the use of deadly force. Ind.Code § 35–42–4–1, *supra.* The term "sexual intercourse" is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35–42–1–2 (Burns 1979 Repl.). It is well settled that our standard in cases of rape is that proof of the slightest degree of penetration is sufficient. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805; *Allbritten v. State,* (1974) 262 Ind. 452, 317 N.E.2d 854. The fact finder may infer penetration from circumstantial evidence such as the physical condition of the victim soon after the incident. *Rowan v. State, supra; Weaver v. State,* (1963) 243 Ind. 560, 187 N.E.2d 485.

In the instant case, it is true that none of the three victims used the specific word "vagina" in describing the acts of rape committed by defendant. However, each vic-

tim did give a description of defendant's various actions during each assault. In the first case, the victim testified that after the oral sexual act, defendant told her to lie back in the seat, took her underwear off, spread her legs apart, and "put his penis in me." She also specifically stated that defendant had "raped" her and "had sex" with her. In the second case, the victim testified that after the oral sex, defendant forced her to take her pants off and "then he started having intercourse with me" which lasted "three to five minutes."

The third victim testified that after defendant forced her to get into the back seat of the car, he took off her blue jeans, panties, and panty hose and demanded that she perform fellatio. She testified:

A. "Yes. He forced his penis in my mouth. Yes he did. Uh, he committed his sexual acts. At one time he did anal intercourse, uh, and then he also, uh, re-entered and finished his intercourse, whatever. Uh, he at that point, he told me to get my clothes back on and he told me if I told anybody about this that I would be dead. Uh, I told him I wouldn't. But ..."

Q. "So, you actually had intercourse with the man?"

A. "Yes I did."

Q. "Against your will?"

A. "Yes it was."

While this testimony establishes acts of oral and anal sex, it also supports the inference that defendant finished his sexual assault by completing vaginal intercourse.

■ It is clearly settled in this state that the uncorroborated testimony of a rape victim is enough to support a conviction. *Tillman v. State,* (1980) Ind., 408 N.E.2d 1250; *Dobrzykowski v. State,* (1978) 269 Ind. 604, 382 N.E.2d 170. While it is true that more specific questioning of each victim would have been desirable for purposes of appellate review, the testimony of each victim does include sufficient specific details which, together with the terms "rape" and "sexual intercourse" used by the vic-

tims, support the jury's conclusion that penetration of each victim's sex organ by defendant's sex organ did occur. *Lindsey v. State,* (1971) 257 Ind. 78, 272 N.E.2d 458; *Davis v. State,* (1972) 258 Ind. 533, 282 N.E.2d 805; *Omans v. State,* (1980) Ind. App., 412 N.E.2d 305. The evidence is sufficient to sustain each count of rape.

Defendant also contends that there was insufficient evidence to sustain his convictions for robbery in the second and third cases. He alleges that there was no force or threat of force used in obtaining the money from these victims. The record shows that one victim gave some money to defendant when he asked her for it and the other victim dumped the contents of her purse on the front seat of the automobile at defendant's direction and defendant took the money at that time. We find no merit in defendant's allegations here. Clearly, both victims had been threatened with a knife and told not to scream or they would be hurt at the beginning of the attacks. The knife was used to force each victim to drive around and to submit to the sexual assaults. The defendant was still holding the knife or had it within easy reach when he demanded the money from each victim. Under our standard of review for sufficiency of the evidence, as cited above, this was clearly sufficient evidence from which the jury could infer that defendant used the threat of force in demanding money from each victim.

## II.

Defendant next contends that his conviction for attempted robbery must be vacated because the charging information did not sufficiently state the elements of robbery which the charge of attempted robbery would be based on and did not state sufficient facts to show that any public offense had been committed. However, he concedes that this issue was not raised prior to trial or in his motion to correct errors. It is well established in Indiana that a challenge to the sufficiency of an indictment or information is governed by statutory provisions and must be made by a

motion to dismiss prior to arraignment and plea or any error in this regard is waived. Ind.Code § 35–3.1–1–4(a)(9) (Burns 1979 Repl.); *Diggs v. State,* (1977) 266 Ind. 547, 364 N.E.2d 1176; *Lisenko v. State,* (1976) 265 Ind. 488, 355 N.E.2d 841; *Brown v. State,* (1970) 254 Ind. 504, 260 N.E.2d 876. We have explained the reasons for this rule: "If the indictment is defective there will be an opportunity to amend before trial, and expense and time-consuming efforts in a trial will thus not be lost. Another sound reason for such a rule is that a party should be required to promptly raise error in the trial court at the time it occurs rather than remain silent, hoping for an acquittal, and if that does not occur, then raise the question of error for the first time." *Brown v. State, supra,* 254 Ind. at 506–7, 260 N.E.2d at 877. While the failure to challenge the adequacy of the information is one factor which can be considered in Issue V below, concerning the effective assistance of counsel, we find that the sufficiency of the charging information is not before us on this appeal.

## III.

Defendant's trial counsel filed a timely motion to correct errors which raised fourteen specifications of error. This motion was denied and another attorney was appointed to perfect the appeal. The appellate counsel filed a petition for leave to file a belated motion for new trial based upon the inadequacy of the original motion to correct errors. The court denied this petition after a hearing and defendant now alleges that the denial was an abuse of discretion.

 It is well settled that a trial court's ruling on a belated motion to correct errors will be reversed only upon a showing of abuse of discretion. *Adams v. State,* (1979) 270 Ind. 406, 386 N.E.2d 657; *Newland v. State,* (1968) 250 Ind. 512, 236 N.E.2d 45, *cert. denied* 393 U.S. 937, 89 S.Ct. 298, 21 L.Ed.2d 273. Defendant argues that the initial motion to correct errors was inadequate because it failed to raise several issues. We find no merit to this

contention. The original motion to correct errors was timely filed and the errors were alleged with the specificity required by our rules. We have clearly held that the mere omission of issues in an otherwise timely and proper motion would not render such motion inadequate *so as to serve as grounds* for a petition under Ind.R.P.C. Relief 2(1). *Dobeski v. State,* (1981) Ind., 419 N.E.2d 753; *Adams v. State, supra.*

Furthermore, the record in this case reveals that the original motion to correct errors did raise three of the issues now raised in this appeal concerning the sufficiency of the evidence, the denial of the motion to suppress certain evidence and alleged sentencing errors. The other errors raised in this appeal evolve from the question of the effectiveness of the trial counsel and this question obviously could not be raised in the original motion to correct errors. We find no abuse of discretion in the trial court's denial of defendant's petition for leave to file a belated motion for new trial.

### IV.

Defendant next alleges that the trial court erred in denying his motion to suppress certain evidence upon the basis that it had been obtained as the result of an illegal arrest. The record shows that defendant was arrested for a violation of the 1935 Beverage Act on the evening of December 17, 1979. He first argues that this was a misdemeanor and the arresting officer did not observe the offense being committed.

The evidence presented at the hearing on the motion to suppress established that a police officer, Detective McClintock, personally observed defendant drinking beer inside the Golden Cadillac Cafe on the evening of December 17, 1979. McClintock was not in uniform at the time, so he informed other police officers of his observations and shortly thereafter Officer Ross stopped defendant's car. Officer Ross noted from defendant's driver's license that he was twenty years of age. The officer also detected the odor of alcoholic beverages on defendant's breath. Upon questioning, de-fendant admitted he had been drinking and Officer Ross placed him under arrest.

It is well established in Indiana that a police officer has the authority to make an arrest for a misdemeanor when the misdemeanor is committed within his view. *Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144; *Hart v. State,* (1924) 195 Ind. 384, 145 N.E. 492; *Britt v. State,* (1979) Ind.App., 395 N.E.2d 859. It is also clear that the existence of probable cause to arrest is determined upon the basis of the collective information known to the law enforcement organization, *Owens v. State,* (1981) Ind., 427 N.E.2d 880; *Benton v. State,* (1980) Ind., 401 N.E.2d 697, and the observance of the misdemeanor may be part of that collective information. *Britt v. State, supra,* 395 N.E.2d 859, 861 n. 1. Here, a police officer did actually observe the misdemeanor and relayed this information to another police officer. The arresting officer was able to corroborate the information given him by looking at defendant's driver's license and detecting the odor of alcohol on defendant's breath. There was a valid arrest under the circumstances of this case.

Defendant also argues that since he was already a suspect for the rape charges on December 17, 1979, the arrest on the alcohol charge was merely a pretext arrest which the police used in order to obtain evidence for the more serious offenses. The issue of a pretext arrest only arises when the surrounding circumstances show that the arrest is only a sham being used as an excuse for making a search for evidence of a different and more serious offense for which no probable cause to arrest exists. *Smith v. State,* (1971) 256 Ind. 603, 271 N.E.2d 133. Here, the circumstances show that the police had seen defendant drinking alcoholic beverages and made a valid arrest on that charge. The fact that defendant was also a suspect in the rape cases does not make that arrest improper. *Porter v. State,* (1979) Ind., 391 N.E.2d 801.

 Defendant argues that several items of evidence seized by the police were inadmissible because they were seized in violation of his Fourth Amendment rights. A knife was found in defendant's car during a routine, inventory search when the car was impounded after defendant's arrest. There was no error in the use of the knife as evidence since an inventory of a properly impounded vehicle is an exception to the general requirement that a warrant is necessary before a search may be undertaken. *Dearing v. State,* (1979) Ind., 393 N.E.2d 167; *Griffin v. State,* (1978) 175 Ind.App. 469, 372 N.E.2d 497. Furthermore, there was no error in the admission of his fingerprints and photograph taken as part of the processing procedure at the police station after the arrest on the alcohol charge, since we have determined that was a valid arrest.

 When defendant was arrested, he was taken to the police station and was advised of his rights. He read and signed the advisement of rights card. The police advised him that he was a suspect in the rape cases and he made a comment to the effect that if he did commit the crimes he should be punished but denied those offenses. He then requested an attorney and consulted with the attorney at the police station. After the attorney was present, the police asked if they could search defendant's apartment. Defendant and his attorney privately discussed this request and then defendant consented to the search. There is no evidence here of duress, fraud or intimidation on the part of the police. We find that the consent to the search was voluntarily given and there was no error in the admission of items found in his apartment. *Brames v. State,* (1980) Ind., 406 N.E.2d 252.

## V.

Defendant next argues that he was denied the effective assistance of counsel during his trial. In support of this contention, he lists several actions and decisions of his trial counsel which he claims are ineffective including: the failure to challenge the adequacy of the charging information on the attempted robbery charge; allowing defendant to give his consent to the police to search his apartment; failure to request a hearing on the issue of defendant's competency; moving for a consolidation of the three cases; failing to conduct adequate discovery; failure to file an adequate motion to correct errors; failure to seek a suppression of the victim's in-court identification; and failure to seek a new trial on the basis of newly discovered evidence. We note that many of these points are tactical or strategic decisions about which defendant is now unhappy. The allegations of inadequate discovery and an inadequate motion to correct errors are not supported by the record.

 Regarding competency of counsel, it has been more than frequently stated by this Court that there is a presumption that counsel is competent and that strong and convincing evidence is required to rebut the presumption. *Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37; *Lindley v. State,* (1981) Ind., 426 N.E.2d 398; *Jones v. State,* (1978) 270 Ind. 141, 387 N.E.2d 440. Incompetency of counsel revolves around the particular facts of each case and the standard of review on this issue is the mockery of justice test as modified by the adequate legal representation standard. *Darnell v. State,* (1982) Ind., 435 N.E.2d 250; *Crisp v. State,* (1979) Ind., 394 N.E.2d 115. Deliberate choices made by counsel for some contemplated tactical or strategic reason do not establish ineffective assistance of counsel. This Court will not speculate as to what may have been the most advantageous strategy in a particular case, and the fact that another attorney might have conducted the defense differently is not sufficient to require reversal. *Morris v. State,* (1980) Ind., 409 N.E.2d 608; *Hollon v. State,* (1980) Ind., 398 N.E.2d 1273; *Dull v. State,* (1978) 267 Ind. 549, 372 N.E.2d 171.

 From the record before us, we find that defendant's trial counsel filed several pretrial motions, including a motion for mental examination and a motion to suppress. He presented evidence at the hearing on the motion to suppress and filed a

notice of alibi and a witness list. Two court-appointed doctors did examine defendant and filed reports showing defendant to be competent. There was no evidence to support a request for a hearing on this issue. The consent to search the apartment was clearly defendant's voluntary and strategic decision. On the issue of the insufficiency of the charging information on the attempted robbery, there is no claim that defendant was misled by the charge as it was part of a three-count information involving one incident with one victim. Counsel's tactical decision not to challenge this may have been made because he felt that the count was not misleading to defendant and there was no advantage to be gained since the state would simply be allowed to amend the information.

At the trial, counsel vigorously cross-examined witnesses, raised a standing objection to the introduction of any evidence which had been covered by the motion to suppress, raised numerous other appropriate objections, and presented evidence on behalf of defendant. The record shows that counsel extensively interviewed members of defendant's family and other possible witnesses on his behalf. As noted before, the motion to correct errors raised fourteen points. It is apparent from the record that counsel had conducted an extensive pretrial investigation and had an informed basis for making his strategic and tactical decisions. As a reviewing court, we will not second-guess these decisions. The record does not show that the trial as a whole was a mockery of justice but rather does show that defendant was provided with competent and thorough legal representation.

## VI.

Defendant finally claims that the trial court erred by imposing consecutive terms in the three cases for a total of ninety years without setting forth any aggravating circumstances. We agree with this contention. The record before us now includes a record of the sentencing hearing as well as of the sentencing order. We find that neither the sentencing order nor the record of the sentencing hearing states any aggravating circumstances for the imposition of consecutive sentences. In fact, the record shows that the trial court stated:

> "The Court finds that there were neither aggravating nor mitigating circumstances in this case, the defendant being charged with rape with a deadly weapon and that in itself is a Class A felony without any aggravating circumstances brought forth."

This Court has repeatedly stated:

> "[W]hen a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances." *Gardner v. State,* (1979) 270 Ind. 627, 633, 388 N.E.2d 513, 517.

Furthermore, while Ind.Code § 35–50–1–2 (Burns 1979) places the determination of whether sentences are to be served concurrently or consecutively in the discretion of the trial court except in certain limited circumstances, the code also provides certain factors which may be considered as aggravating circumstances or "as favoring imposing consecutive terms of imprisonment." Ind.Code § 35–4.1–4–7 (35–50–1A–7) (Burns 1979).

Under our present law, it is clear that while the trial court may increase the standard penalties, impose consecutive sentences or both, the court must give specific reasons for its actions. We have pointed out:

> "However, it is clear, that in every case where increased sentences are imposed the record must show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record must show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the

aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence." *Abercrombie v. State,* (1981) Ind., 417 N.E.2d 316, 320.

*See also: Taylor v. State,* (1982) Ind., 442 N.E.2d 1087.

■■ In this case, since the trial court specifically found that there were neither aggravating nor mitigating circumstances, it was error for the court to impose consecutive sentences. The cause is remanded to the court with instructions to vacate the order of consecutive sentences and enter an order of all sentences to run concurrently. The trial court is in all other things affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs and dissents with opinion.

PRENTICE, Justice, concurring and dissenting.

I concur in the affirmance of the conviction but dissent as to the remand with instructions to vacate the order for consecutive sentences.

Obviously the sentencing judge has erred, either in his conclusion that there were no aggravating circumstances or in his order that the sentences be served consecutively. We have no basis for deciding in which respect he erred, and I see no basis for our speculating as to which it was, when by a simple remand the judge can have the opportunity to correct his error.

To me there is an obvious basis for ordering the sentences to be served consecutively, although I recognize and respect the sentencing judge's prerogative to order them served concurrently, if in his judgment that be appropriate. The majority opinion ignores Rule 1 of our rules for appellate review of sentences which authorize revision only "where such sentence is manifestly unreasonable in light of the na-

ture of the offense and the character of the offender." There is nothing manifestly unreasonable about the sentencing judge's order. Rather, it simply is not supported by his statement of findings.

Neither should we overlook that statutory provisions requiring the sentencing judge to state the aggravating and mitigating circumstances are facially applicable only when enhancing or reducing sentences beyond or below the basic period. It is only by virtue of our decisions that the requirement has been made a prerequisite also to the ordering of sentences to run consecutively.

A very reasonable supposition is that the sentencing judge did not see aggravating circumstances within any one of the rape incidences standing alone and hence saw no basis for enhancing any one or more of the sentences but, nevertheless, regarded the defendant's repetitive pattern of violent rapes and robberies as a sufficient basis for imposing consecutive sentences and was unfamiliar with our decisions extending the scope of the statute to multiple sentencing questions.

I do not think that we should, by a flip of the coin, decide that this defendant should serve thirty rather than ninety years. By a simple remand we can position the judge, who has every faculty and facility for correcting his error by conscientious review and logic, to do so. The result reached by the majority is diametrically opposed to the public policy behind our sentencing statutes and our Rules For Appellate Review of Sentences. I dissent.