**Richard S. CHERRY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1079S273.**

Supreme Court of Indiana.

Jan. 7, 1981.

John D. Clouse and Michael C. Keating, Evansville, for appellant.

Theodore L. Sendak, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Richard S. Cherry, was charged with rape, a class A felony, Ind. Code § 35-42-4-1 (Burns 1979 Repl.), criminal deviate conduct, a class A felony, Ind. Code § 35-42-4-2 (Burns 1979 Repl.), and being an habitual offender, Ind.Code § 35-50-2-8 (Burns 1979 Repl.). He was found guilty by a jury on Counts I and II as class B felonies and guilty on Count III. He was sentenced to fifteen, fifteen, and thirty years, respectively, the sentences to be served consecutively. In his appeal he raises twelve issues, but due to our disposition of the case under issue one, we need only consider the following seven issues:

1. Whether the trial court erred in allowing the state to refile two counts against defendant after once dismissing them;

2. Whether Indiana's rape shield act is unconstitutional;

3. Whether members of the prosecutor's staff may testify against a defendant;

4. Whether certain former recorded testimony of a witness was erroneously admitted;

5. Whether defendant was entitled to a discharge under Ind.R.Crim.P. 4(B);

6. Whether the court erred in giving certain instructions and refusing to give others; and

7. Whether the court erred in considering certain aggravating circumstances in determining the sentence.

A summary of the facts from the record most favorable to the state shows that on the evening of December 23, 1977, the victim and a girl-friend walked to a tavern in Evansville, Indiana. They sat at a table and had something to drink. The victim testified that defendant came up to their

table and asked her to dance. She stated that she danced with him several times and may have had more drinks. Her friend left the tavern sometime during the evening, but the victim stayed until approximately 3:00 a. m. At this time, she asked defendant to drive her home and he agreed.

The victim testified that defendant stopped the car about a block from her home and told her to take her clothes off. She refused and tried to get out of the car, but the door wouldn't open. Defendant then pushed her down, threatened to kill her and choked her, causing scratches on her neck. He forced her to have intercourse with him and then forced her to have oral sex with him. After this, the victim asked defendant to take her to the home of her former husband because she was afraid her present husband wouldn't believe her. Defendant dropped her off at her former husband's home around 4:00 a. m. She then called the police and the rape crisis line and went to the hospital.

### I.

Defendant first alleges that it was error for the state to refile two counts against him after once dismissing them. Defendant was originally charged early in 1978, with three counts arising from the instant crime: Count I, rape, a class A felony; Count II, criminal deviate conduct, a class A felony; and Count III, habitual offender. In May, 1978, defendant moved to sever the counts and this motion was granted. The state indicated it would try defendant only on Counts II and III. A jury trial in June, 1978, resulted in a guilty verdict on Count II and a hung jury on Count III. The trial court found there were aggravating circumstances and sentenced defendant to forty years' imprisonment on the criminal deviate conduct count. After the sentencing, the state made a motion to dismiss Counts I and III and this motion was granted.

Defendant filed a motion to correct errors and later a supplemental motion to correct errors. These motions were granted by the trial court in November, 1978, on the basis of prejudicial testimony admitted during the trial and defendant's poor physical condition which had not been attended to for several months preceding and during the trial while he was held in jail. After defendant had been granted a new trial on December 11, 1978, the state refiled the other two counts against him on January 9, 1979, and January 29, 1979. A second jury trial was held in April, 1979, without the introduction of the improper and prejudicial testimony. This trial resulted in guilty verdicts on all three counts. However, the jury at this time found defendant guilty of both rape and criminal deviate conduct as class B felonies rather than class A felonies as charged. The trial court again found aggravating circumstances and sentenced defendant to serve fifteen, fifteen, and thirty year terms consecutively. Defendant is now serving a sixty year term of imprisonment rather than the forty year term he was given at his first trial.

Defendant argues that allowing the state to refile the two counts which they had dismissed after the sentencing at the original trial violated his double jeopardy and due process rights. It is clear that defendant's double jeopardy argument must fail since there had been no trial on the rape charge as of the time of dismissal and the trial on the habitual offender count had ended in a hung jury. In both those situations double jeopardy does not bar further prosecution. *Harlan v. State*, (1921) 190 Ind. 322, 130 N.E. 413; *Crim v. State*, (1973) 156 Ind.App. 66, 294 N.E.2d 822.

However, the timing of the state's actions in this case does raise a serious due process question. We must consider the issue of "prosecutorial vindictiveness" under the principles enunciated by the United States Supreme Court in *Blackledge v. Perry*, (1974) 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, and *North Carolina v. Pearce*, (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

The Supreme Court first addressed the situation where a judge imposed an increased penalty on a criminal defendant at a second trial after he had successfully appealed his first trial. The Court held that due process prohibits actual vindictiveness in resentencing and said that:

" . . . since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." [Footnotes omitted.] *North Carolina v. Pearce,* (1969) 395 U.S. 711, 725–726, 89 S.Ct. 2072, 2080–2081, 23 L.Ed.2d 656, 669–670.

The rationale of *Pearce* was extended to prosecutorial conduct in *Blackledge v. Perry, supra.* In *Blackledge* the defendant was convicted in state court on a misdemeanor assault charge. When he exercised a statutorily granted right to demand a trial *de novo* on appeal, the prosecutor obtained a felony assault indictment based upon the same conduct. Upon review before the Supreme Court it was held that the prosecution's unexplained filing of an increased charge violated the defendant's due process rights, even in the absence of any evidence that the prosecutor acted in bad faith or maliciously. The Court stated that:

"A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. [Citation omitted.]

"Due process of law requires that such a potential for vindictiveness must not enter into North Carolina's two–tiered appellate process." 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628, 634–635.

■ Questions of prosecutorial vindictiveness are not easy to resolve because two antithetical interests are brought into conflict. One is the due process right of the defendant to be free of apprehension that he will be subjected to an increased punishment if he exercises his right to attack his conviction and the other is the substantial discretion traditionally accorded the prosecutor in controlling the decision to prosecute. *Blackledge* and its progeny show that there must be a balancing of the defendant's interest against that of the state in order to protect both these interests. *Blackledge, supra; United States v. Andrews,* (6th Cir. 1980) 612 F.2d 235; *Miracle v. Estelle,* (5th Cir. 1979) 592 F.2d 1269; *Jackson v. Walker,* (5th Cir. 1978) 585 F.2d 139; *United States v. Groves,* (9th Cir. 1978) 571 F.2d 450; *United States v. Alvarado–Sandoval,* (9th Cir. 1977) 557 F.2d 645; *United States v. Jamison,* (D.C.Cir.1974) 505 F.2d 407.

■ In analyzing *Blackledge* and *Pearce,* we find it is clear that when the prosecution has occasion to file more numerous or more severe charges for the same basic criminal conduct against an accused *after* the accused has successfully exercised his statutory or constitutional rights to an appeal, the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose. There is no question in the instant case of the increased harshness of the penalty for defendant when the state refiled the two additional charges against him. The defendant's interest here is a substantial one considering both the increased sentence which he received and the addition of two felony convictions to his record.

On the other hand, the state has offered no reason for refiling the two additional charges. We find no unusual circumstances here which could support the timing of the state's actions such as the discovery of additional evidence, elements of the crime being completed which were not complete at the time of the first trial, or an honest mistake or oversight being made at the time of the

original decision to prosecute. In fact, the timing of the state's actions points solely to a vindictive motive. The state did not dismiss the original rape and habitual offender counts until *after* defendant had been sentenced to forty years on the original criminal deviate conduct charge. Then the state did not refile those two counts until after defendant had *successfully* appealed the criminal deviate conduct conviction and had been granted a new trial on that count.

■ We need not find that the prosecutor actually acted in bad faith or that he maliciously sought the refiling of the two charges. The underlying concern of the *Blackledge* and *Pearce* decisions is that it is the realistic apprehension of vindictiveness, rather than vindictiveness in fact, which controls. The factual situation of the crimes behind the charges is not dispositive on the question of vindictiveness; rather, it is to be regarded as only one of the factors bearing on the issue. *United States v. Groves, supra; United States v. DeMarco,* (9th Cir. 1977) 550 F.2d 1224; *Midgett v. McClelland,* (4th Cir. 1977) 547 F.2d 1194; *Hayes v. Cowan,* (6th Cir. 1976) 547 F.2d 42; *United States v. Johnson,* (4th Cir. 1976) 537 F.2d 1170. Some jurisdictions have attempted to limit *Blackledge* and *Pearce* strictly to fact situations in which there has been only the substitution of a more serious charge and not the addition of charges. This approach ignores *Blackledge's* underlying concern with the appearance of vindictiveness and its chilling effect on defendants and gives too much deference to prosecutorial discretion. Vindictiveness issues are only present after the state has had ample opportunity to exercise its discretion. The circumstances in this case show that the appearance of vindictiveness is very high and there was no other apparent reason for the timing of the state's actions. Since this case involves only the prosecutor's right to reopen a previously completed exercise of discretion involving the same basic criminal acts, the state has not met its burden of proving that the timing of the refiling of the two charges was not motivated by vindictiveness.

Thus, the timing of events in this case, when considered with the likelihood that the two dismissed charges would never have been refiled if there had been no appeal or reversal of conviction, leads to the inescapable conclusion that the refiling of the two previously dismissed charges had the effect of punishing the defendant for pursuing an appeal of his conviction, a constitutional and statutory right he clearly has. Therefore, the convictions on Counts I and III must be reversed.

## II.

■ Defendant next contends that the Indiana rape shield statute Ind.Code § 35–1 32.5 1 (Burns 1979 Repl.) violates the equal protection clause of the Fourteenth Amendment because it discriminates against rape defendants. This issue has been decided adversely to defendant in *Finney v. State,* (1979) Ind.App., 385 N.E.2d 477, where the Court held that since rape defendants are not a suspect classification, the equal protection clause requires only that there be a rational and reasonable basis for the classification and that it bear a fair relationship to the purpose of the statute. In light of the legitimate state policies which the statute is designed to promote, it cannot be said that the disparate treatment of rape defendants is without a reasonable basis. *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103.

## III.

At the trial, defense counsel cross-examined the victim concerning the description she gave police of her assailant as a thin man with either brown or reddish-brown hair. This description did not fit the defendant at the time of trial since he was not thin and had dark brown or black hair.

The state then called two witnesses to rebut this misidentification testimony. The witnesses, Robert Carithers and Scott Bowers, were deputy prosecutors who had seen defendant at the time of his first trial. They testified that the appearance of defendant had changed substantially from his appearance at the first trial and that he had

gained a good deal of weight after hospital treatment for severe thyroid and heart conditions. Bowers further testified that defendant formerly had reddish hair.

■■■ Defendant argues that it was reversible error to allow the two deputy prosecutors to testify about a material matter. It is clear that the dual role of lawyer-witness should be avoided out of consideration of several rules of professional responsibility, but a lawyer in a case is not thereby rendered incompetent as a witness. A prosecuting attorney is a sworn officer of the court and is entitled, in the sound discretion of the trial judge, to be heard as a rebuttal witness. *Worthington v. State*, (1980) Ind., 405 N.E.2d 913; *Hodge v. State*, (1976) 264 Ind. 377, 344 N.E.2d 293; *Butler v. State*, (1951) 229 Ind. 241, 97 N.E.2d 492. In this case, the deputy prosecutors were responding to a challenge to the integrity of a state's witness and there were apparently no other witnesses available to testify as to defendant's appearance at the time of the prior trial. Under these circumstances, we find no abuse of discretion on the part of the trial judge in permitting the testimony of the deputy prosecutors.

### IV.

The victim was examined after the incident at the hospital emergency room by Dr. Carmen Haynes. Dr. Haynes testified at defendant's first trial, but was working in Huntsville, Alabama, at the time of the second trial. Her recorded testimony from the first trial was admitted as evidence over defendant's objection. He now contends that the admission of this evidence was erroneous because it was hearsay and did not fall within the prior testimony exception. We disagree.

■■■ The admission or exclusion of prior testimony of an unavailable witness is subject to the discretion of the trial court when certain requirements are met. *Pollard v. State*, (1979) Ind., 388 N.E.2d 496. Here, it is clear that the objected to testimony was given at a former judicial proceeding, was given under oath, and was subject to cross examination by the defendant. Defendant argues that there was not sufficient evidence of the unavailability of the witness since there was nothing to indicate the state had contacted her to ask her if she would appear. There was testimony, however, that Dr. Haynes was working at the time of the trial in Huntsville, Alabama, and that Alabama had not enacted the Uniform Act to Secure the Attendance of Witnesses from Without a State. Therefore, there was no reciprocal duty emanating from the law of Alabama to insure the attendance of a witness working in that state. Under these circumstances, we find that the unavailability of the witness was sufficiently established and there was no abuse of discretion in allowing the admission of the prior recorded testimony.

### V.

■■■ Defendant, *pro se*, filed a motion for early trial on January 23, 1979. Trial was commenced on April 9, 1979, at which time defendant filed a motion to dismiss pursuant to Ind.R.Crim.P. 4(B), arguing that seventy six days had elapsed since the filing of his *pro se* motion. There is no merit to this argument since the trial date of April 9, 1979, had been set before defendant's *pro se* motion was filed and this April 9, 1979, date was reaffirmed on February 9, 1979. Defendant did not object to the trial date at that time and so has waived any error. It is well settled that a defendant has an obligation to object at the earliest opportunity when his trial date is set beyond the seventy day limit set by Ind.R. Crim.P. 4(B), or he waives his right to discharge under that rule. *Heflin v. State*, (1977) 267 Ind. 427, 370 N.E.2d 895; *Cheeks v. State*, (1977) 266 Ind. 190, 361 N.E.2d 906. There was no error here.

### VI.

■■■ Defendant next contends that the trial court erred in refusing to give three of his tendered instructions. His tendered instruction No. 1 read: "You have no right to find the defendant guilty only for the purpose of deterring others from committing

crime." The substance of this instruction was adequately covered by the court's preliminary instructions No. 1 and No. 4 which instructed the jury not to consider matters outside the evidence before them and advised the jury of defendant's presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt. A trial court commits no error when it refuses to give a tendered instruction which is adequately covered by other instructions. *Richmond v. State*, (1979) Ind., 387 N.E.2d 1312; *Toliver v. State*, (1978) 267 Ind. 575, 372 N.E.2d 452.

Also, defendant's tendered instruction No. 2 which was refused dealt with the jury's duty in resolving conflicting evidence. The substance of this instruction was covered by defendant's instruction No. 3 which was given and also dealt with resolving conflicts in the evidence. There was no error in refusing this instruction.

 Defendant's tendered instruction No. 6, which was refused, instructed the jury as to the elements of battery as a lesser included offense of rape and criminal deviate conduct. The test for determining whether it was error to refuse instructions on lesser included offenses is whether there was evidence adduced at trial to which the included offense instruction was applicable. *Rowley v. State*, (1979) Ind., 394 N.E.2d 928; *Pruitt v. State*, (1978) Ind., 382 N.E.2d 150. Here, the testimony of the victim concerning the actual criminal acts was uncontroverted since defendant did not take the stand. There was no testimony which could support a lesser included offense, and it was not error to refuse this instruction.

 Defendant also argues that the trial court erred in giving the state's instruction No. 5 which instructed the jury that the evidence was to be considered as a whole and that all incidental or subsidiary facts did not have to be proved beyond a reasonable doubt. This instruction has been approved in *Ringham v. State*, (1974) 261 Ind. 628, 308 N.E.2d 863. Furthermore, although defendant argues this was an incomplete instruction, he does not allege that he tendered a more complete instruction.

He has therefore waived any error on this issue. *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168; *Brown v. State*, (1976) 264 Ind. 484, 346 N.E.2d 559; *Woods v. State*, (1979) Ind.App., 391 N.E.2d 858.

## VII.

Finally, defendant argues that the trial court erred in considering certain factors as aggravating circumstances in determining the sentence. He first argues that it is unconstitutional for the trial court to consider the same prior crimes that are the basis for the habitual offender count as also part of the aggravating circumstances. This issue is moot due to our reversal of the habitual offender conviction under issue I, above.

Defendant further argues that it was erroneous for the trial court to consider his previous convictions, an alleged unrelated sexual assault by defendant, and his juvenile record. The trial judge stated that he found the aggravating circumstances outweighed the mitigating circumstances and listed the aggravating circumstances in the following words:

"This Court now states into the record that defendant's prior record, juvenile record and the presentence report demonstrate the likelihood that defendant will do further crimes of a like nature, demonstrate a total lack on defendant's part and disregard for the life and well being of other persons. This Court believes imprisonment to be necessary, and defendant has demonstrated obvious criminal sexual tendencies and he constitutes a danger to society."

 It is clear that it was proper for the trial court to consider the defendant's presentence report, his past criminal history and the risk that he would commit another crime in finding aggravating circumstances. West's Ann.Ind.Code § 35-4.1-4-7 (1978); *Williams v. State*, (1979) Ind., 393 N.E.2d 149; *McNew v. State*, (1979) Ind., 391 N.E.2d 607. There is no evidence that the judge improperly considered any prior charges which had resulted in an acquittal.

We find that the trial judge did consider proper factors and did make an adequate statement of reasons to support the addition of five years to the basic ten years for a class B felony on the criminal deviate conduct count.

For all the foregoing reasons, the judgment of the trial court should be affirmed as to the conviction on Count II and reversed as to the convictions on Counts I and III.

Judgment affirmed in part and reversed in part.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, concurring in part; dissenting in part.

I dissent from the majority opinion on Issue I. The majority goes far beyond the Supreme Court cases it purports to rely on, and establishes a new, absurd, illogical and unworkable "rule" concerning the filing of charges where the defendant has successfully appealed from a conviction on a separate, distinct charge.

The majority purports to rely on *North Carolina v. Pearce*, (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, and *Blackledge v. Perry*, (1974) 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, and freely quotes apparently supportive language from those cases. In *North Carolina v. Pearce*, the defendant received what amounted to a greater sentence after an appeal, reversal and retrial for the same charge he had been convicted of in the first trial. The Court phrased the issue presented there in terms of "constitutional limitations upon the imposition of a more severe punishment after conviction *for the same offense* upon retrial." 395 U.S. at 715–16, 89 S.Ct. at 2075, 23 L.Ed.2d at 664 (emphasis added). The Court held that a defendant's exercise of his right to appeal may not be deterred by the threat of "retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669. Thus, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reason for his doing so must affirmatively appear." *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Nowhere does the Court suggest or even imply that this rule would also apply to separate, distinct charges of which the defendant has neither been previously convicted nor sentenced.

In *Blackledge v. Perry, supra,* the United States Supreme Court applied the notions expressed in *Pearce* to prosecutors. In *Perry*, the defendant was initially charged with assault, a misdemeanor under North Carolina law. After being convicted in the misdemeanor court, Perry filed notice of his intent to exercise his absolute statutory right to a trial de novo in a court of general jurisdiction. Thereafter, the prosecutor obtained an indictment charging Perry with assault with a deadly weapon with the intent to kill, a felony. Perry pleaded guilty and received a substantially greater sentence than he had received for the misdemeanor conviction. Following the logic of *North Carolina v. Pearce*, the Supreme Court found this result denied Perry due process. The Court specifically noted: "The indictment covered the same conduct for which Perry had been tried and convicted in the District Court." 417 U.S. at 23, 94 S.Ct. at 2100, 40 L.Ed.2d at 631. The Court in *Blackledge v. Perry* again focused on the "danger of vindictiveness." And, as it had done in *Pearce*, the Court in *Perry* specifically defined the context in which such possible vindictiveness is relevant:

"A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate *by substituting a more serious charge for the original one*, thus subjecting him to a significantly increased potential period of incarceration." *Id.* at 28, 94 S.Ct. at 2102 03, 40 L.Ed.2d at 634 35 (emphasis added). Thus, both *Pearce* and *Perry* specifically concerned only cases involving the same or substituted charges which pertained to exactly the same conduct. Again, just as in *Pearce*, there is nothing in *Blackledge v. Perry* which even remotely suggests that this rule

applies to separate, distinct crimes of which the defendant has not been previously convicted or sentenced.

Supreme Court cases subsequent to *North Carolina v. Pearce* also recognized the limited context in which "vindictiveness" is relevant. In *Colten v. Kentucky*, (1972) 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, the defendant argued that *Pearce* was applicable to Kentucky's two-tier system of processing misdemeanors. The Court addressed Colten's contention and described *Pearce* in this fashion:

"[P]earce did not turn simply on the fact of conviction, appeal, reversal, reconviction, and a greater sentence. The court was there concerned with two defendants who, after their convictions had been set aside on appeal, *were reconvicted for the same offenses* and sentenced to longer prison terms."

407 U.S. at 116, 92 S.Ct. at 1960, 32 L.Ed.2d at 593 (emphasis added). While the rule of *North Carolina v. Pearce* was not extended to the situation presented in *Colten v. Kentucky*, that case also involved only one offense. *See Chaffin v. Stynchcombe*, (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714. *See also Bordenkircher v. Hayes*, (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (discussed *infra*). Thus, the United States Supreme Court is one of the courts which has, as the majority opinion states, "attempted to limit *Blackledge [v. Perry]* and *Pearce* to fact situations in which there has been only the substitution of a more serious charge and not the addition of charges." At 306.

The language of these cases plainly and consistently reveals the United States Supreme Court's concern with the treatment of the same or substituted charges by courts and prosecutors. Just as plainly, these cases in no way implicitly suggest or logically require the applicability of the vindictiveness rule to cases involving separate, additional crimes. Clearly, then, the majority here is not simply following the dictates of *Pearce* and *Perry*, but is fashioning out of whole cloth a rule for situations to which *Pearce* and its progeny undoubtedly were never intended to apply. The logic of the

majority opinion would give rise to a suggestion of vindictiveness whenever a prosecutor files any other, additional charges against a defendant after that defendant has successfully appealed a conviction for a separate crime. I have very serious doubts as to whether *Pearce* and *Perry* dictate such a result.

Further, the majority opinion, by its terms, is not restricted in its application only to refiled charges which arose out of the same general incident, which happens to be true in this case. Thus, we must assume the majority's sweeping language would apply to any charges which the prosecutor has the misfortune to file after the defendant has obtained a reversal of a conviction for some totally unrelated charge. In fact, the thrust of the majority's opinion indicates that this vindictiveness rule would apply to additional charges which have never before been filed. The majority repeatedly emphasizes the timing of the refiling, as evidence of the alleged vindictiveness. Of course, the initial filing of an unrelated charge could also occur shortly after the defendant has successfully appealed some other, unrelated conviction. The timing of such a filing could be coincidental, or, obviously, it could be justifiably prompted by the reversal the defendant has obtained. In such a situation, the majority would apparently require the prosecutor to justify the timing of the new filing of charges. I do not believe he should be required to make such a justification, and, more importantly, I do not read *Pearce* and its progeny to require this justification. I do not believe the Court in *Pearce* and its progeny intended to curtail or limit the prosecutor's otherwise broad discretion in the sweeping, substantial fashion the majority has here. *See Bordenkircher v. Hayes, supra.*

In an astoundingly summary manner, the majority equates the filing of a more severe charge with the refiling of an additional charge or charges. The logic of such an equation is fatally flawed. In the former situation, the more severe charge, by definition, covers the same conduct as the original charge; in the latter situation, as in the

case before us, the additional charge, by definition, covers altogether different, independently culpable conduct. Thus, in the *Pearce* line of cases, the defendant received a greater penalty upon conviction of the same or substituted charges which arose out of the same conduct. In the case now before us, Cherry received a greater *total* sentence for *three* charges, one of which ·at Cherry's request—was not tried in the first trial, and two of which were later dismissed and then reinstated by the prosecutor.

Saying, as the majority does, that the additional charges in this case pertained to "the same basic criminal conduct"·-which, emphatically, they do not· does not bring the case before us under the principles of *Pearce* and *Perry*. The fact that the rape occurred shortly before or shortly after the criminal deviate conduct, does not mean that these two charges are for "the same basic criminal conduct." It would seem even more obvious that the habitual criminal charge, which does not really require any additional acts, does not involve "the same basic criminal conduct" as either of the other two charges. This newly coined phrase only confuses the issue and attempts to blur the fundamental distinction between refiling the same but greater charge, and refiling separate charges, which concern completely separate acts. Further, this "standard" of "the same basic criminal conduct" raises many more questions than it answers. For example, may we now logically say that, if the rape charge and the deviate conduct charge *do* involve "the same basic criminal conduct" for purposes of this issue, are they not also the "same" for double jeopardy purposes? *See Elmore v. State,* (1978) 269 Ind. 532, 382 N.E.2d 893.

The critical distinction between the situation found in *North Carolina v. Pearce* and its progeny and the situation presented here may be seen in another way. In the *Pearce* line of cases, the application of the vindictiveness rule occurred only when the sentencing authority or the prosecutor attempted to "up the ante" and retaliate against the defendant for having successfully pursued his appeal rights and, in effect, punish him more severely for precisely the same conduct, i. e., for the same or a substituted charge. In those cases, it was only because the defendant had exercised his right to appeal that the prosecutor or sentencing authority was even in a position where he could attempt to "up the ante." In other words, if the defendant had not fully exercised his rights, the specter of vindictiveness would *never* have arisen in any of the *Pearce* line of cases. The facts of *Blackledge v. Perry, supra,* illustrate this proposition. In that case, if the defendant had not pursued his right to a trial de novo, and the prosecutor had nonetheless obtained the indictment for the felony charge, that charge undoubtedly would have been subject to dismissal as a violation of Perry's right against double jeopardy. Thus, the guidelines of *Pearce* and its progeny necessarily presuppose the defendant's successful exercise of his appeal rights.

In the case before us, however, the initial filing and the refiling of the rape and habitual criminal charges were *never* contingent upon Cherry's exercise of any of his rights. From their inception, these charges stood independently from the criminal deviate conduct charge. As long as the rape charge and the habitual criminal charge were validly brought initially, they remained valid regardless of the outcome, at trial or on appeal, of the deviate conduct charge. Even if Cherry had lost on his motion to correct error and lost on appeal, the prosecutor would have been acting within his discretion in refiling the rape and habitual criminal charges. The same would be true if Cherry had been acquitted of the deviate conduct charge in the first trial. Likewise, the prosecutor would have been acting within his discretion if he had never dismissed the two charges. (In retrospect, he no doubt wishes he had not done so.) Further, he could have dismissed and then refiled the charges after sentencing but before the court's decision on the motion to correct error, or even before that motion was filed. Thus, the prosecutor here was in a position of dealing with the rape and habitual criminal charges as he wished and when he wished, and his alternatives with

respect to those charges were in no way limited by the defendant's course of action, or the result of that action, with respect to the deviate conduct charge. Therefore, because these charges retained validity regardless of the outcome of Cherry's motion to correct error concerning the deviate conduct conviction, there could have been no possible fear on Cherry's part that the State would retaliate by filing a more severe charge *in lieu of* the deviate conduct charge. *See Blackledge v. Perry, supra*, 417 U.S. at 28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634–35.

On the other hand, obviously, none of the alternatives discussed above which were present in this case would have been available in any fashion to the prosecutor in *Blackledge v. Perry.* The reason is equally obvious: his alternatives were wholly dependent upon the defendant's actions. This was the central point of the *Pearce* line of cases. Plainly, then, it is in that context when the prosecutor's vindictiveness becomes relevant. If, as in this case, his dispositional alternatives are not dependent on the defendant's exercise of his rights, the prosecutor's motivation in pursuing any of those alternatives is not relevant to determining the validity of the resulting convictions.

Finally, in my view, this case is closely analogous to *Bordenkircher v. Hayes*, (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, to which the majority opinion fails to pay even the most cursory lip service. In *Bordenkircher v. Hayes*, the defendant was charged with uttering a forged instrument, an offense carrying a two-to ten year prison term. After arraignment, during subsequent plea negotiations, the prosecutor informed Hayes that if he did not plead guilty to the indictment and accept the prosecutor's recommended five year sentence, the prosecutor would seek another indictment charging Hayes under Kentucky's habitual criminal statute. Conviction under that statute carried with it (at that time) a mandatory life sentence. Hayes refused to plead guilty to the forgery charge, and the prosecutor then obtained the habitual criminal indictment. Hayes was found guilty on both counts, and subsequently challenged the enhanced sentence as being violative of *Blackledge v. Perry, supra.*

The United States Supreme Court held that the prosecutor's action in seeking the additional indictment did not violate due process. In explaining this result, the Court emphasized the "give-and-take" present in a plea-bargain situation, and also pointed out: "It is not disputed that the recidivist charge was fully justified by the evidence, that the prosecutor was in possession of this evidence at the time of the original indictment, and that Hayes' refusal to plead guilty to the original charge was what led to his indictment under the habitual criminal statute." *Id.* at 359, 98 S.Ct. at 666, 54 L.Ed.2d at 608. The Court noted that, so long as the defendant was free to accept or reject the prosecutor's offer and thereby assert or waive his right to plead not guilty there is no element of prosecutorial punishment or retaliation.

Insofar as prosecutorial vindictiveness is concerned, the right to plead not guilty is similar to the right to appeal. In the former situation, the defendant may waive his right to plead not guilty because he wants a "better deal" of some sort. That "deal" may include the prosecutor's dismissal of other valid, independently chargeable offenses. On the other hand, he may exercise his right to plead not guilty. If he does so, under *Bordenkircher v. Hayes*, he runs the risk that the prosecutor will exercise his wide discretion to this detriment, by making the defendant "fac[e] [additional] charges on which he was plainly subject to prosecution." *Id.* at 365, 98 S.Ct. at 669, 54 L.Ed.2d at 612.

In the latter situation, the defendant in this case was faced with parallel alternatives. Cherry chose to exercise his right to appeal, just as the defendant Hayes exercised his right to a trial. Cherry could have waived his right to appeal, just as Hayes could have accepted the prosecutor's offer and waived his rights. Cherry knew, or should have known, just as Hayes knew,

that the added charges might be brought against him. In fact, in Cherry's case at least, the added charges could have been maintained regardless of Cherry's decision on whether to exercise or waive his rights. Of course, the prosecutor probably would not have refiled the rape and habitual criminal charges if Cherry had lost his appeal from the deviate conduct conviction. However, "[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choices in response to prosecutorial persuasion. . . ." *Id.* at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 611. Thus, I would view this case as being analogous to *Bordenkircher v. Hayes, supra,* and I would hold that the prosecutor was merely presenting Cherry with charges the latter knew might be refiled (in any event) and on which he was plainly subject to prosecution.

The Supreme Court's opinion in *Bordenkircher v. Hayes* also effectively challenges the majority's assertion that "[t]he underlying concern of the *Blackledge [v. Perry]* and *Pearce* decisions is that it is the realistic apprehension of vindictiveness, rather than vindictiveness in fact, which controls." At 306. In *Bordenkircher v. Hayes,* the Court explained the problem in *Pearce* and *Perry* in this fashion:

> "The Court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from the exercise of a legal right, *see Colten v. Kentucky,* (1972) 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584; *Chaffin v. Stynchcombe,* (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction."

434 U.S. at 363, 98 S.Ct. at 667 68, 54 L.Ed.2d at 610. If the majority here would equate the "realistic apprehension of vindictiveness" with "the possibility that a defendant might be deterred," then, according to *Bordenkircher v. Hayes,* the majority's reading of *Pearce* and *Perry* is flawed in this respect as well. Equally inaccurate, then, is the majority's claim that the "un-

derlying concern" of *Blackledge v. Perry* is "with the appearance of vindictiveness and its chilling effect on defendants." At 306.

In sum, I believe the majority has grossly misinterpreted Supreme Court cases dealing with the issue of vindictiveness, and thereby reached a result which the Supreme Court never contemplated and, no doubt, never intended. I would affirm the convictions for rape and habitual criminality.

GIVAN, C. J., concurs.