Shawn A. SNYDER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 54A04–9502–CR–61.

Court of Appeals of Indiana.

Sept. 28, 1995.

William A. Goebel, Goebel, McGaughey & Sosbe, Crawfordsville, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

■ Shawn A. Snyder appeals his conviction by jury of criminal recklessness, a class D felony,[1] and his sentence thereon. We affirm.

### ISSUES [2]

I. Whether there is sufficient evidence to support Snyder's conviction.

II. Whether the trial court erred in sentencing Snyder.

---

1. Ind.Code 35–42–2–2.

2. Snyder also argues that "the defendant's motion for directed verdict should have been granted and that it was error to allow the case to be submitted to the jury." However, Snyder has waived this argument by producing evidence on his behalf after the trial court denied his motion. *See, Bryant v. State* (1986), Ind., 498 N.E.2d 397; *Bivins v. State* (1982), Ind., 433 N.E.2d 387.

III. Whether the prosecutor acted vindictively.

### FACTS

The facts most favorable to the verdict reveal that Shawn Snyder owned and lived in a house in Ladoga, Indiana. Tonga Ash and Matt Haderle lived on the second floor of Snyder's house. They had verbally agreed to pay Snyder $240.00 per month for rent, as well as one half of the grocery and utility expenses. On November 29, 1993, Ash and Haderle returned to the residence and discovered that Snyder was not at home, and that he had locked them out. Ash and Haderle entered the house through an unlocked window and went up to their bedroom. Haderle fell asleep on a mattress on the bedroom floor, and Ash lay on the mattress and read a book. Ash's head was supported by a pillow.

Shortly thereafter, Snyder entered the bedroom and demanded to be paid for telephone expenses. Snyder was holding a shotgun, and Haderle pulled Ash close to him. Snyder discharged the shotgun into the pillow upon which Ash had rested her head while reading. The shotgun pellets tore holes in the pillow and the mattress.

Later that afternoon, Ash and Haderle provided written statements for Ladoga Town Marshall Joseph Hedge. Ash's statement provides as follows:

We came home. Door was locked. Open BR window. Went upstairs to room we rent. Was sleeping when Shawn came up screaming we owed money for phone which we had already paid yesterday. He then fired shot gun next to my head in pillow. We got dressed. Was outside when [Hedge] came up.

(R. 151). Haderle's statement provides in pertinent part as follows:

... The back door that we have keys for was chained. We thought it was an oversight on their part. No problem. I entered through the bathroom window. We went upstairs and went to bed. About 45 minutes later we heard Shawn coming upstairs. By the time I looked up he had a 12 gauge shotgun pointed at [Ash's] head who was laying next to me.

(R. 148).

Snyder was charged with criminal recklessness with a deadly weapon, a class D felony. On April 19, 1994, the State and Snyder entered into a plea agreement pursuant to which Snyder would have "receive[d] alternative misdemeanor treatment." (R. 18). However, the trial court rejected the agreement, and Snyder was tried and convicted by a jury. Snyder was sentenced to two years, with all but 40 days of the sentence suspended. The 40 day sentence was "to be served intermittently on 20 weekends at times to be arranged by the Probation Department." (R. 54). Further, Snyder was fined $1,000.00, $500.00 suspended, assessed court costs, and placed on probation for two years.

### DECISION

I. *Sufficiency of the Evidence*

■ Snyder argues that there is insufficient evidence to support his conviction for criminal recklessness, a class D felony. We disagree.

■ Our standard of review for sufficiency of the evidence is well settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

Ind.Code 35-42-2-2 provides in pertinent part as follows:

(b) A person who recklessly, knowingly or intentionally performs:

(1) An act that creates a substantial risk of bodily injury to another person ... commits criminal recklessness, a Class B misdemeanor. However, the offense is a:

. . .

(2) Class D felony if it is committed while armed with a deadly weapon.[3]

---

**3.** Snyder's information provides in pertinent part as follows:

Conduct is reckless if a person "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code 35–41–2–2(c).

In *Upp v. State* (1985), Ind.App., 473 N.E.2d 1030, Upp fired several shots at the feet of a trespasser. We noted that the shots were directed close to the trespasser, and that "had Upp missed his aim or had a bullet struck a stone and ricocheted, there was a substantial risk that [the victim] would have been hit." *Id.* at 1032. Accordingly, we found that "Upp's conduct fulfilled all the requirements of the statute." *Id.*

Here, Ash and Haderle were lying on a mattress on their bedroom floor when Snyder entered the room with a loaded shotgun. Snyder fired a shot into the pillow on which Ash had been resting her head. At the time that Snyder fired the gun, its muzzle was approximately 12 inches from Ash's head. Ash was taken to the emergency room because her ear was ringing, and her ear bled for two days after the shooting. We observe that had Snyder missed his aim or had the shotgun pellets ricocheted, there was a substantial risk that Ash would have been hit. There is more than sufficient evidence to support Snyder's criminal recklessness conviction.

## II. *Sentencing*

The trial court sentenced Snyder to two years for the criminal recklessness, a class D felony.[4] All but 40 days of the sentence was suspended, and it was "to be served intermittently on 20 weekends at times to be arranged by the Probation Department." (R. 54). Snyder argues that the trial court erred in sentencing him. We disagree.

[O]n or about the 29th day of [November], 1993, at 420 North Franklin Street, Ladoga, Montgomery County, State of Indiana, Shawn Snyder did recklessly with a deadly weapon, to-wit; a 12 gauge Mossberg shotgun, perform an act, to-wit: pointed said gun and discharged the weapon in the direction of Tonga Ash, and said act created a substantial risk of bodily injury to Tonga Ash. . . .

The determination of a sentence rests with the discretion of the trial court. *Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36. An appellate court will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offender and the offense. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096, 1100. A sentence is not manifestly unreasonable unless no reasonable person could consider the sentence appropriate. *Reichard v. State* (1987), Ind., 510 N.E.2d 163, 167.

Further, trial court judges are vested with wide discretion to impose enhanced sentences, consecutive sentences, or both. *Ridenour v. State* (1994), Ind.App., 639 N.E.2d 288, 296. The trial court need list only one aggravating circumstance to support an enhanced sentence. *Duvall, supra.* An enhanced sentence can be imposed when the only aggravating circumstance is a prior criminal history. *Id.* However, if sentences are enhanced, made consecutive, or both, due to the aggravating circumstances, the trial court must explain the reasons underlying the sentencing decision. *Id.* An adequate explanation contains: 1) a list of the aggravating and mitigating factors, 2) a statement of the specific reasons why each factor is considered to be aggravating or mitigating, and 3) an evaluation or balancing of the factors. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 71.

Here, the trial court stated in pertinent part as follows at the sentencing hearing:

[T]he Court having considered the presentence report and the evidence presented at this hearing, now finds that with respect to the considerations which the Court must consider in imposing sentence, first, as to the risk that the defendant will commit another crime, the Court finds that the evidence is that the defendant has, in a relatively short time, come to the attention

4. Ind.Code 35–50–2–7 provides in pertinent part as follows:

(a) A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (½) years, with not more than one and one-half (½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances . . .

of law enforcement officers on three separate occasions for crimes connected with violence or the use or attempted misuse of power over another person. That there has, in fact, been, purportedly, an attempt by the defendant to deal with that issue in a constructive way which, through counseling, which apparently was insufficient, and the Court finds that there is, in fact, such a risk at this time, and the Court balances against that history, the fact that the defendant has made certain admissions, both at trial and at this hearing, which the Court believes are not made for any purpose other than their truth, that defendant believes what he did was in error and unwise. And those admissions tend to lead the Court to believe that defendant had, in fact, had serious reflection upon the consequences of his acts.... The Court does find an aggravating circumstance, in that the defendant has a prior criminal record, that is the Battery conviction. The Court does not find that there are any compelling mitigating circumstances.... [T]he court finds that the aggravating circumstance call[s] for enhancement of the presumptive sentence to one of two years.

(R. 268–72).

[11–13] Snyder now argues that the trial court erred because it failed to consider the following mitigating factors: 1) that he provides consistent support to a dependent, 2) the victim asked the trial judge not to impose an executed or enhanced sentence, and 3) that he was previously sentenced to a one year term of probation which he completed in six months. However, the finding of mitigating factors is not mandatory and rests within the discretion of the trial court. *Graham v. State* (1989), Ind., 535 N.E.2d 1152, 1154, *reh'g denied.* If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has chosen not to make a finding of mitigation. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254, *reh'g denied.* Further, the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed. *Id.*

Our supreme court rejected an argument similar to that made by Snyder in *Fugate v. State* (1993), Ind., 608 N.E.2d 1370. In *Fugate,* the defendant was convicted of murder and attempted murder and received a sixty year sentence for the murder conviction and a forty year sentence for the attempted murder conviction. The trial court found that the defendant had an extensive prior criminal history and observed that the various convictions and incarcerations had apparently not changed the defendant's behavior. The trial court also found that the defendant was in need of rehabilitative treatment and that he was likely to commit violent crimes again. On appeal, the defendant argued that the trial court erred when it failed to consider the defendant's substance abuse and mental illness to be mitigating factors. However, based upon the analysis of the aggravating and mitigating factors stated above, the supreme court found that the trial court did not err in sentencing the defendant.

Clearly, the trial court here was under no obligation to accept as mitigating circumstances the factors submitted by Snyder. Further, the trial court properly considered Snyder's prior criminal history to be an aggravating factor, and that factor alone is sufficient to support Snyder's enhanced sentence. The trial court did not err in sentencing Snyder.

### III. *Prosecutorial Vindictiveness*

Snyder argues that the prosecutor acted vindictively. Specifically, Snyder argues that "at the sentencing hearing the prosecutor acted vindictively when he asked for felony treatment for the defendant after previously offering a plea allowing for misdemeanor treatment which was rejected by the court." Snyder's Brief, p. 1. According to Snyder, the "Prosecuting Attorney acted vindictively one can only assume based on the fact that he was forced to try this case before a jury and thereafter argued for a more stringent sentence." Snyder's Brief, p. 7. In support of his argument, Snyder directs us to *Cherry v. State* (1981), 275 Ind. 14, 414 N.E.2d 301, *cert. dismissed,* 453 U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033.

In *Cherry, supra,* Cherry was originally charged with three counts: Count I, rape; Count II, criminal deviate conduct; and Count III, habitual offender. Cherry's motion to sever the counts was granted, and the State indicated that it would only try Cherry on counts II and III. A jury trial resulted in a guilty verdict on Count II, and a hung jury on Count III. After sentencing, the trial court granted the State's motion to dismiss counts I and III. Shortly thereafter, Cherry filed a motion to correct errors, which the trial court granted on the basis of prejudicial testimony admitted during the trial and Cherry's poor physical condition. After the trial court granted Cherry's motion for a new trial, the State refiled the other two counts against him. A jury found Cherry guilty of all three counts.

On appeal, Cherry argued that allowing the State to refile the two counts which they had dismissed after the sentencing at the original trial violated his double jeopardy and due process rights. Our supreme court found that Cherry's double jeopardy argument had to fail because there had been no trial on the rape charge as of the time of dismissal and the trial on the habitual offender count had ended in a hung jury. However, the supreme court observed that the timing of the State's actions raised a serious due process question. Accordingly, the court "consider[ed] the issue of 'prosecutorial vindictiveness' under the principles enunciated by the United States Supreme Court," and observed that the State had offered no reason for refiling the two additional charges. *Id.* 414 N.E.2d at 304. Further, our supreme court found no unusual circumstances which could have supported the timing of the State's actions such as the discovery of additional evidence, elements of the crime being completed which were not complete at the time of the first trial, or an honest mistake or oversight being made at the time of the original decision to prosecute. In addition, according to the supreme court, the timing of the State's actions pointed solely to a vindictive motive. Because the timing of events in the case, when considered with the likelihood that the two dismissed charges would never have been refiled if there had been no appeal or reversal of conviction led to the inescap-

able conclusion that the refiling of the two previously dismissed charges had the effect of punishing Cherry for pursuing an appeal of his conviction, a constitutional and statutory right, our supreme court reversed Cherry's convictions on Counts I and III.

However, the facts before us are distinguishable from those in *Cherry, supra.* Here, the prosecutor and Snyder entered into a plea agreement which provided that if Snyder pleaded guilty to criminal recklessness, a class D felony, he would receive "alternative misdemeanor treatment." (R. 18). However, the trial court rejected the plea agreement and set the case for jury trial. The jury returned a verdict that Snyder was guilty of a class D felony. At Snyder's sentencing hearing, the prosecutor requested that the court "impose sentence for a Class D Felony." (R. 266). We fail to see how the prosecutor's request for a class D felony sentence for a class D felony guilty verdict reflects prosecutorial vindictiveness. Unlike *Cherry, supra,* the State's actions do not point solely to a vindictive motive. Further, we know of no requirement that, at the sentencing hearing, the prosecutor argue for the same sentence which the trial court rejected in a plea agreement. We find no prosecutorial vindictiveness.

Affirmed.

CHEZEM and RUCKER, JJ., concur.