**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 03 2014, 7:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN S. HARTMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 68A05-1311-CR-579 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE RANDOLPH CIRCUIT COURT
The Honorable Jay L. Toney, Judge
Cause No. 68C01-1002-MR-17

**September 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

Case Summary and Issues

Following a jury trial, Brian S. Hartman was convicted of two counts of murder for the death of his parents. Hartman raises two issues for review: whether the trial court erred in allowing an amendment to the charging information, and whether the trial court erred in refusing to sever Count I from Counts II and III. Concluding the trial court did not err, we affirm.

Facts and Procedural History

Hartman lived in a converted pole barn on his parents' property with his two children. Brian Ellis and Cheri Ann (Hartman's parents) also lived on the property, in a separate home. In 2008, Cheri Ann was diagnosed with a brain tumor; she also suffered from COPD, emphysema, and lumbar stenosis. By February 3, 2010, Cheri Ann's tumor had stabilized and was not progressing. Cheri Ann was prescribed OxyContin and Hydrocodone for her pain in ninety-day doses, as she saw her doctor every three months. Hartman often abused his mother's prescriptions. On the night of February 12, Hartman called 911 and reported his mother was foaming at the mouth and having trouble breathing. Emergency medical technicians found Cheri Ann unresponsive with no pulse. They transported Cheri Ann to a hospital, but were unable to revive her. Cheri Ann's official cause of death was listed as respiratory failure; at the time of her death, law enforcement had no reason to suspect foul play.

Hartman did not accompany his mother to the hospital. He told his children that their grandmother had died and that a friend had taken his father out of town. The next

morning, Hartman and his children met with a funeral home director and instructed that Cheri Ann's wishes were to be cremated. The funeral director told Hartman that Brian Ellis would need to authorize the cremation; Hartman then told him that his father had left the area, and he was not certain when he would return. Hartman was allowed to authorize the cremation, and Cheri Ann was cremated the following week.

Hartman called his aunt, Barbara Baumgartner (Brian Ellis's sister), to tell her of Cheri Ann's death. When Barbara asked about her brother, Hartman told her that he had left town. Barbara offered to call Brian Ellis to check on him, but Hartman told her he left his cell phone and wanted to be alone. Facing questions from both Barbara and Charlie Ogden, a family friend, about Brian Ellis's whereabouts, Hartman offered inconsistent stories, changing from his father leaving in his red truck, to a friend picking him up in a white vehicle, to a taxi picking him up. Throughout that week, Hartman consumed Cheri Ann's OxyContin.

On the afternoon of February 20, Hartman was on his neighbor's property, which prompted the neighbor's daughter to call police. This was during his mother's funeral. Hartman, his father, and his children did not attend Cheri Ann's funeral. Barbara arranged a welfare check with the Randolph County Sheriff's Department for her brother. A superficial search revealed nothing. Barbara returned to the house with other family members to do a better search on February 22. They found Brian Ellis's boots, hat, watch, and jacket in the home and his wallet and driver's license in Hartman's coat pocket. They also found a large box in the garage where Cheri Ann's vehicle should have been, along with a cleaning bucket and several garbage bags.

3

Also on February 22, Hartman was taken into custody on burglary charges based on the February 20 police report of Hartman being on his neighbor's property. Detective Doug Fritz interviewed Hartman to find out where Hartman's father was. Hartman told the detective that his father left on February 11 with a friend, and he had not seen him since. The detective asked why Brian Ellis would leave home without his keys, wallet, or money, to which Hartman responded his father had taken ten thousand dollars in cash and left Hartman the checkbook and credit cards to pay for Cheri Ann's funeral. Detective Fritz then asked why Brian Ellis would have left money for Cheri Ann's funeral on February 11 when she did not die until February 12. At that point, Hartman asked for an attorney and the questioning ceased.

Barbara called Detective Fritz on February 23 to report what she found at the house, and the police obtained a search warrant for the property. In executing the warrant, the officers found red stains on the master bedroom headboards, walls, ceiling, and a large red stain on the mattress; there was also a trail of "drag marks" along the floor to the garage. Transcript at 382. There were red streaks on the garage floor and on beer boxes and on the gravel near a black box. In the box, they discovered Brian Ellis's body wrapped tightly in a tarp. Around one o'clock on the morning of February 24, Detective Tom Pullins had Hartman brought to the intake area of the jail (where Hartman was still being held) and informed him that he had to read Hartman the search warrants. After reading the warrants aloud, Detective Pullins asked Hartman if he had any questions. Hartman asked if the house had been searched, and if anything had been found. The detective asked if Hartman wanted to speak with the detectives, and Hartman said yes. Hartman was then given his

Miranda rights again, and told police he shot and killed his father as he slept, then assisted his mother in committing suicide by overdosing her on prescription pain medication.

Hartman was charged on February 26 with murder and assisting a suicide, a Class C felony. Pre-trial, Hartman moved to suppress his February 24 statements to police. The trial court denied his motion after a hearing on the issue. The suppression issue ultimately was resolved by our supreme court on interlocutory appeal on May 31, 2013: the court concluded the February 24 questioning was improper after Hartman had previously requested counsel on February 22, rendering the statements inadmissible. Hartman v. State, 988 N.E.2d 785, 789-90 (Ind. 2013).

On June 28, 2013, the State filed a motion to amend the charging information. Hartman then filed a motion to dismiss the additional charge on July 16. That same day, the trial court heard arguments on the issue. On August 5, the trial court granted the State's motion, and the State filed an amended information containing three counts: Count I – murder (Brian Ellis); Count II – Class C felony assisting a suicide (Cheri Ann); Count III – murder (Cheri Ann). The addition of Count III was to reflect the changes in evidence as Hartman's statement to police that he helped his mother commit suicide was inadmissible. Hartman subsequently sought to sever the charge relating to his father from the charges relating to his mother. The trial court denied the motion after a hearing.

Hartman was tried by a jury October 7–10, 2013. The court granted Hartman's motion for a directed verdict as to Count II after the State's presentation of evidence, but denied the same as to Count III. The jury found Hartman guilty of both charges of murder.

Hartman was sentenced to sixty years for each murder count, to run consecutively, for an aggregate 120 year executed sentence. He now appeals.

Discussion and Decision

I. Amendment of Charging Information

A. Vindictive Prosecution

1. Standard of Review

After a defendant has successfully exercised a constitutional or statutory right to attack a conviction and the prosecution then files more numerous or more severe charges for the same basic criminal conduct, "the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose." Cherry v. State, 275 Ind. 14, 20, 414 N.E.2d 301, 305-06 (1981), cert. dismissed, 453 U.S. 946 (1981). In cases where the charges are modified before trial, though, the defendant is not entitled to a presumption of vindictiveness. Cox v. State, 475 N.E.2d 664, 671 (Ind. 1985). "Where the defendant objects to the filing of an additional charge prior to trial, the defendant must show that the decision to add a charge was motivated by a desire to punish the defendant for doing something the law allowed him to do." Coates v. State, 534 N.E.2d 1087, 1090 (Ind. 1989) (citing Cox, 475 N.E.2d at 671). We will not reweigh the evidence or judge witness credibility in reviewing the trial court's decision to deny the dismissal of additional charges based on prosecutorial vindictiveness. Reynolds v. State, 625 N.E.2d 1319, 1322 (Ind. Ct. App. 1993), trans. denied.

2. Addition of Count III – Murder

Hartman relies heavily on <u>Cherry</u> for the proposition that the prosecution bears a heavy burden in proving that the increase in charges was not motivated by a vindictive purpose, 414 N.E.2d at 305-06, and argues we should apply the rationale behind <u>Cherry</u> here. Hartman does not acknowledge or discuss precedent from our supreme court that differentiates the standard for prosecutorial vindictiveness in cases where charges were amended pretrial, <u>see</u> <u>Cox</u>, 475 N.E.2d at 671 (citing <u>United States v. Goodwin</u>, 457 U.S. 368 (1982), and <u>Bordenkircher v. Hayes,</u> 434 U.S. 357 (1978)), and the refiling of charges after successfully attacking a conviction or a mistrial, <u>see</u> <u>Cherry</u>, 414 N.E.2d at 304 (citing <u>Blackledge v. Perry</u>, 417 U.S. 21 (1974)).

Hartman's conclusory statement that the State could have amended the charges sooner in the litigation does nothing to "show that the decision to add a charge was motivated by a desire to punish the defendant for doing something the law allowed him to do." <u>Coates</u>, 534 N.E.2d at 1090. Hartman has not met his burden in showing the additional charge was a punishment for his pre-trial motion to suppress.

### B. Prejudicing Substantial Rights

#### 1. Standard of Review

Amendments to a charging information can either be substantive amendments or amendments of form; both are governed by Indiana Code section 35-34-1-5. Relevant here is Indiana Code section 35-45-1-5(b):

> (b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
> \*\*\*
> (2) before the commencement of trial;

7

if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

Ind. Code § 35-34-1-5(b). An amendment is one of substance if it is essential to making the valid charge of a crime. Fajardo v. State, 859 N.E.2d 1201, 1207 (Ind. 2007).

A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.

Gomez v. State, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations omitted) (quotations omitted), trans. denied.

## 2. Addition of Count III – Murder

Hartman was initially charged with two counts on February 26, 2010, and the charges were amended to include a third count on August 5, 2013. Hartman moved for a continuance based on the amendment of the charges a week later, and eventually was tried beginning October 7, 2013. He posits that the State's position changed in the case, and that change is impermissible, but makes no developed argument on this point.[1] Hartman does not advance an argument that his position was changed by the filing of the additional charge.[2] See Appellant's Brief at 16-17. He makes no contention that he did not have

---

[1] Indeed, we found throughout Hartman's brief that he failed to fully develop arguments why the trial court committed reversible error, instead simply citing large blocks of text from cases without applying the law in contravention of Appellate Rule 46(8)(a). However, since we have a preference to resolve cases on their merits on appeal where possible, see Foley v. Mannor, 844 N.E.2d 494, 496 n.1 (Ind. Ct. App. 2006), we address his claims.

[2] Hartman argues for the first time in his reply brief that he would be unable to use the defense of lack of evidence regarding his mother's suicidal intentions as a defense against the murder charge, and this caused him prejudice. Appellants are not permitted to present new arguments for the first time in reply briefs; thus, the argument is forfeited. Felsher v. Univ. of Evansville, 755 N.E.2d 589, 593 n.6 (Ind. 2001); Ind. Appellate Rule 46(C).

sufficient notice or opportunity to be heard, or that he did not have a reasonable opportunity to prepare for and defend against the charges. The charges against Hartman changed from Hartman purposely furnishing his mother with enough drugs to overdose and result in her death to comply with her wishes, to Hartman purposely furnishing his mother with enough drugs to overdose and result in her death. We find no prejudice to Hartman's substantial rights as a result of the amendment.

## II. Severance

### A. Standard of Review

Hartman next argues the trial court should have severed Count I from Counts II and III because there was overwhelming evidence that Hartman killed his father, but insufficient evidence that he killed his mother,[3] and the jury impermissibly transferred culpability for his father's death to his mother's death. A defendant has the right to severance of offenses when they are joined solely on the ground that they are of the same or similar character. Ind. Code § 35-34-1-11(a). In all other cases, upon a motion, the court

> shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

---

[3] He does not raise a separate claim that there was insufficient evidence to support the conviction.

Id.  A court's refusal to sever charges that are permissibly joined under Indiana Code section 35-34-1-9(a)(2)[4] is reviewed for an abuse of discretion.  Kahlenbeck v. State, 719 N.E.2d 1213, 1216 (Ind. 1999).  "On appeal, a defendant must show that in light of what actually occurred at trial, the denial of a separate trial subjected him to . . . prejudice." Jackson v. State, 938 N.E.2d 29, 37 (Ind. Ct. App. 2010) (citations and quotations omitted), trans. denied.

### B.  Severance of Count I from Counts II and III

Here, Hartman focuses on Indiana Code section 35-34-1-11(a)(3) and alleges the jury was unable to distinguish the evidence and apply the law intelligently as to each offense.  Acknowledging the overwhelming evidence against him in the death of his father, Hartman argues that he was only convicted of killing his mother because the evidence showed he killed his father; this then created an improper inference of guilt.  This prejudice (and the subsequent murder conviction), it follows, would not have occurred had the charges been severed.  We find no evidence, nor does Hartman point us to any, that the jury had difficulty distinguishing the evidence as it related to Brian Ellis or Cheri Ann, or that the jury had difficulty applying the law to each offense.  The evidence supporting the murder charge for each crime was very different.  Brian Ellis was shot once in the head; Cheri Ann's death was consistent with a drug overdose.  Hartman lied about his father's whereabouts after killing him, but called emergency services for his mother.  Hartman has

---

[4] "Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses . . . are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."  Ind. Code § 35-34-1-9(a)(2).

not shown he was prejudiced in light of what happened at trial.  Therefore, the trial court did not abuse its discretion in denying the motion to sever the charges.

Conclusion

Concluding the amendment to the charging information was permissible and the trial court did not abuse its discretion in denying Hartman's motion to sever the offenses, we affirm.

Affirmed.

RILEY, J., and BRADFORD, J., concur.